Mr. Justice Cox
delivered tbe opinion of the court.
I am requested to announce the opinion of the court in the case of John Brewer against the District of Columbia, M. J. Laughlin and Wm. II. Thumbert.
An act of the Legislative Asseznbly of the District of Columbia, of Juzie 25, 1873, relating to- the collection of arrearages of taxes, contained a-rno-ng othez*» the following, provisions, stated in brief:
“ That it shall be the duty of tbe collector of taxes of the District of Columbia, on or about tbe first day of Jzily, 1873, to issue certificates of all taxes on real estate which shall then be unpaid and! in arrears, and in like manner, on or about the fiz'st day of July in each such succeeding year * * *- which shall be a preferred lien * * *; that in all cases-of the issue of certificates, as herein provided, it shall he the privilege of the. ewers of any certificates, from- and after *277 tbe expiration, of one year from tbe date thereof, to demand in writing, by endorsement on tbe same, that the collector shall enforce the payment of the lien ; and it shall be the duty of said officer to advertise for ten days in some one daily newspaper in the District of Columbia, and sell at public auction,” etc.
In pursuance of that authority, a certificate of taxes due upon square 98 was issued for the taxes due for the year ending June 30,1872, which was transferred to a third person, whether by way of collateral or by way of absolute sale does not appear so far as I remember. At all events, in 1876, at the instance, as it is presumed, of the holder of the certificate, the property was exposed to sale, and was sold on the third of January, 1876, to Albert Gr. Hall, and a deed passed to him; and this title, by sundry mesne conveyances, came to the complainant in 1884.
On the second of September, 1884, the property was again advertised for sale by the collector of taxes, to satisfy a number of taxes due before the first sale. One of these was a special tax levied under the late Corporation of Washington far a footway laid in front of the pavement, and the other taxes consisted of the annual taxes for 1873, 1874 and 1875. So that after selling once, in 1876, for one year’s tax, that is to say for 1872, the collector undertook to sell again for the taxes for 1873, 1874 and 1875, which had already accrued at the time of the first sale.
The plaintiff prayed an injunction against these subsequent jn’oceedings, claiming that by the first sale the existing liens for taxes were extinguished. The District, on the other hand, claimed, as does also the holder of one of the tax certificates, that the sale was made simply to satisfy a single tax, i. e. for the year 1872, leaving all others unsettled and all other liens unaffected.
If the tax collector had a right to sell for all taxes in arrears before the last sale*, then the complainant claims that one of those taxes, being the special tax for the foot-way laid in front of the property, was illegal on other *278 grounds, namely: because of a failure to comply with sundry requirements of the law.
Now, as a general rule, we all understand that a tax deed is not even prima facie evidence of title. It is incumbent on the holder who asserts title under it to prove affirmatively that all the preliminaries to the sale which the law prescribes were complied with.
But supposing this has been done, and the law to have been complied with, then the general theory of the tax title is well expressed in the opinion of Judge Oaldwell of the Supreme Court of Ohio, at page 621 of Blackwell on Tax Titles, which reads as follows :
“A tax title, from its very nature, has nothing to do with the previous chain of title; does not in any way connect itself with it. It is a breaking up of all previous titles. The party holding such title, in proving it, goes no further than his tax deeds; the former title can be of no service to him, nor can it .prejudice him. It was well said by counsel in argument on this point, that a tax sale operated on the property, not on the title. In an ordinary case, it matters not how many different interests may be connected with the title, what may be the particular interest of the party in whose name the property may be listed for taxation, it may be a mere equitable right;. if the land be regularly sold for taxes, the property,, accompanied with a legal title, goes to the purchaser, no matter how many estate,s, legal or equitable, may be connected with it. And in case the person in whose name in was listed', who had but an equitable title to the-land at the time of the tax sale; gets a conveyance from the person holding the legal title, he cannot avail himself of i-t. The land has gone and another title has intervened.”
All the legislation of Congress in this District on the subject of tax sales seems to be entirely in conformity with this general theory. Going back to the charter of 1820, of the city of Washington, we find that after-providing for a-sale for taxes in arrears, it contains this proviso :
“That minors, mortgagees, or others having equitable-interests in real property, which property shall be sold- for *279 taxes as aforesaid, shall be allowed one year after such minor’s coming to or being of full age, or after such mortgagees or others having equitable interests obtaining possession of or a decree for the sale of such property, to redeem the property so sold, from the purchaser or purchasers, his, her or their heirs or assigns, on paying the amount of purchase money so paid therefor, with 10 per centum interest thereon as aforesaid, and all the taxes that have been paid thereon by the purchaser or his assigns, between the day of sale and the period of such redemption, with 10 per centum interest on the amount of such taxes, and also the full value of the improvements which may have been made or erected on such property by the purchaser or his assigns while the same was in his, her or their possession.”
There is also a general provision that the owner of the property sold may, within two years after the sale, redeem the title by paying the purchase money, etc.
Now, of course, if such sale passed nothing but the owner’s tille to the lot, and did not affect any incumbrances, liens or collateral interests in the property, it would not be necessary to reserve any right of redemption to parties holding interests of that hind.
The very faet of reserving this right of redemption implies that without it the tax title would be a complete extinction and expunging of all pre-existing title, and would pass the property as from an original source of title. And the terms of the reservation, being limited to a certain time, exclude any further indulgence than is expressed in the reservation itself. If any of these parties provided for fail to redeem within the time expressed in the law, it is too late; too late because the law manifestly was intended to have the operation which I have described, that is, of passing an absolute, complete and perfect title, subject only to a limited right of redemption as expressed in the law.
This charter was amended in particulars that are entirely unrelated to the present question, by the acts of both 1824 and 1848. With that exception things remained in this condition until the charter of the city was abolished and the *280 District government was established in 1811. Then in pursuance of its general power of legislation, the Legislative Assembly of this District passed a general law called “An act prescribing the duties of certain officers for the District of Columbia and fixing their compensation,” directing that upon the failure of parties to pay the taxes, the collector shall institute proceedings for their collection, and directing that, after the sale, if the property shall not be redeemed by the owner thereof within one year from the day of sale by the payment of the amount, etc., a deed therefor, countersigned by the Secretary of the District of Columbia, and having affixed the seal of the District, shall be given by the governor to the purchaser at the tax sale, which deed shall he deemed and held to he a good and perfect title in fee simple to any property bought at any such sale. The old act of 1820 described the bill of 1820 as “ a good and valid title,” and we see what that good and valid title meant by reference to the proviso which followed. It meant a perfect title subject to the right of redemption given by the law.
This goes even further. It gives “a good andperfect title in fee simple.” It is difficult to see how a title can be a perfect title in fee simple, when it is subject to pre-existing liens, or is liable at any time to be displaced by their enforcement.
But it is made plainer what the meaning of the act of 1820 is by the proviso in favor of minors, mortgagees or others having equitable interests, and the same considerations heretofore noticed will apply to this act, viz., that the land sold is subject to redemption only within a limited time by those having a right to redeem, as they are enumerated in the proviso.
In neither act was any right given to the District of Columbia or to the old corporation of Washington, to make any correction of the tax list after the sale had been made, or to reassess upon the property taxes omitted by accident or design from its original list — the list before the sale, and it never occurred to anybody that such a right existed,
A title once passed was held to be a perfect title, as *281 against the District and against all the world, with the exception that I have mentioned — -the limited right to redeem.
Then in 1813 there was passed this act which is the subject of our special consideration. In order to save time in the collection of taxes, instead of imposing a duty upon the collector of selling property for the purpose of realizing taxes for the District, the governor was authorized to raise money upon them immediately; the cost of the delay in the collection to fall upon the purchaser of the certificates or the lender of money upon the certificates as collateral. And after providing, as I have already stated, that the governor might, by a sale of the taxes, or a temporary loan based upon them, anticipate the collection of the taxes, it goes on and provides what I have already stated, that the holder of the certificates may demand, and the collector shall enforce, the payment of the lien, and then it shall be the duty of the officer to advertise for ten days in some one daily newspaper, and to sell at public auction, for cash, to the highest bidder, any and all pieces of property against which certificates may have been issued and for the sale of which demand shall have been made, and out of the proceeds of sale pay, first, the expenses of the sale and then the commission, and second, the amount of the tax certificates with interest thereon, and third, the remainder, if any, to be deposited in the treasury of the District and held subject to the draft of the owner, etc.
Now it is claimed that under this law the collector is called upon to sell for the satisfaction of this lien, because the holder of the lien demands that the collector shall enforce the payment of the lien ; and it is inferred from that that it is not intended that any other lien, or any lien for ■additional taxes, shall be enforced.
But that really is not the question. The question is, In the enforcement of the lien what title passes by the sale ? If this lien only is enforced and none other disturbed or •any other interests affected hy the sale, of course it is unnecessary to provide any right of redemption in favor of *282 parties having other interests in the property, for they would remain unimpaired and could be asserted at any time.
' But this law contained the same right of redemption, only in a more limited degree, as the other acts. It provides “ That minors and mortgagees shall have the right to redeem the property for a period of six months after obtaining majority, or maturity of mortgage, by payment of purchase money, cost of improvements," etc.
The same considerations I have already adduced will apply to this. This limited right to redeem excludes any idea of a further right, any right to interfere with the integrity of the tax title ; and it assumes that without this equity of redemption the tax title will be a perfect title and will prevail against all existing interests of that kind; that they are expunged and cut up by the roots.
As it originally was expressed, this act was more forcible than any of the others. It provides that the deed “shall convey a good and perfect title to the property sold, and shall be conclusive evidence of the same in any court of law or equity in the District of Columbia."
That was a very harsh provision, because it not only relieved the holder of the tax title from affirmatively proving the preliminary steps necessary to the validity of his title, but actually precluded the owner of the lot from disputing the validity of the sale. Therefore, the next day an act was passed amending that pro-vision in this particular. It provided that in place of the words, “ good and perfect title," there should be substituted the words, “prima facie title,” and in place of the words, “conclusive evidence," there should be substituted the words, “prima facie evidence.”
But the object of this, evidently, was simply to give back to the owner of the lot the privilege of contesting the validity of the deed to the property of which he was deprived by the sale. It was not a change in the character of the title -when conveyed, provided the title was conveyed strictly in accordance with the law.
But it is said, if that is the construction of this act, we *283 inUst fieeessarily impute to the Legislative Assembly of the ■District a kind of legislation which almost necessarily results in a loss of part of the public taxes. For instance, it is said that under the Act of 1871, the collector of taxes is obliged to sell for taxes due to the District at a certain time of the year; but a holder of one of these certificates can demand payment -at any time of the year, and can call on the collector to sell in ten days. So that the periods fixed for the sale of taxes due to the District and those fixed by the certificate holder may he different periods, and therefore, as the two kinds of taxes cannot be embraced in the ;same sale, there can be but one sale, and the other tax is gone.
This difficulty seems to us more imaginary than real. The law does not authorize the holder of the certificate to ■require a sale in ten days. He is entitled, by indorsement on the certificate, to claim or demand that the collector shall enforce the payment of the lien, and it shall be the duty of the officer to advertise for ten days.
The ten days refers to the length of time of advertising, but no time is fixed for the commencement of the advertising at all; so that it must be left to some extent to his reasonable discretion. And that is further proved from the closing part of the paragraph, which directs him to include as many lots in the same sale as may be subject to similar liens, on the demand of different parties.
Of course those demands may be made at different times, 'and he must necessarily delay as to one more than the other; :and therefore there is no time fixed by law within which be is required to commence to advertise. He is simply to advertise for ten days, and I presume would be at liberty to advertise for a longer period; there is nothing to prevent that.
Now, if at the time of the demand made by the holder of -a certificate, there is no tax due to the District, no difficulty arises in the enforcement of the lien. And even if a tax is due to the District, practically no inconvenience would follow. The collector is'authorized almost immediately after *284 the tax falls due to collect it. He must require the owner of the property to pay within ninety days; and if he fails, then on one months’ notice he can collect the tax; so that only a moderate delay in a compliance with the demands of the certificate holder would bring the period of sale for the two taxes together, and it would hardly happen that the right of the collector to sell for general taxes due to the District would not be synchronous with the right of the certificate holder to demand the enforcement of his lien.
After this there were several acts of Congress passed which seem to reach a case of this kind, and which would relieve it of even the supposed difficulty I have spoken of. In 1814, on the 20th of June, the law which was passed abolishing the District government entirely, contained this enactment:
“It shall be the duty of the collector of taxes to prepare a complete list of all taxes, and property upon which the same are assessed, in arrears on the first day of March, i. e., the first of March, 1815, and then, ten days afterwards, publish them and proceed to collect,” etc. It is claimed that this does not refer to any taxes except those directly due to the District. And yet it is comprehensive enough to embrace all taxes covered by these certificates.
The indebtedness which these certificates cover does not cease to be an indebtedness for taxes. It is quite different from the consequences of a sale for taxes. If a sale once takes place, the tax is extinguished j the owner of the property owes nothing, but has a right to pay redemption money to the holder of the tax certificate to redeem the property. But these certificates are given for taxes. They do not cease to be taxes because the certificates are assigned absolutely or by way of sale. On the contrary, they are expressly for annual taxes which are to be collected, as taxes, by the collector of taxes; and they are just as much arrears of taxés as those that remain unpaid to the District government itself. I am not able to see why they are not included in the general provision that all taxes which are in *285 arrears shall be listed and the property advertised for sale and the property sold with that exception.
Now these acts comprehend all the tax that was covered by this certificate. It was the duty of the collecor to sell for that and the other taxes due to the District at the period mentioned in this act, which was before the date of the actual sale, to satisfy this one certificate.
That act was repealed in 1875. That would bring the sale to March, 1876. Some time in the end of December, 1875, probably, the collector received notice to sell for satisfaction of this lien, and he might have postponed it until March and embraced both of the taxes within the same sale.
Several other complications have been suggested as the probable consequences of this interpretation. They do not grow out of the present case and we are hardly called upon to solve them. For instance, it is said that he might issue his certificates for one year’s taxes, which the holder could not call upon him to enforce for one year, and then, at the end of that year, he might issue a certificate for another tax, which would run a year. Then the first holder might call for a sale, and the collector would have to sell for his tax and could not sell for the other, and must necessarily lose it.
Taking the laws all together, it seems to us that whenever a collector was called upon to sell, it became his d.uty to sell for taxes; and this complication would not really result.
But even if these consequences would follow, it is not the fault of the parties who bought a t this sale. It is the fault of the legislature which enacted this inconsiderate legislation; but, at the same time, the very language of the law gave to the purchaser a good and valid title, which seems to us to extinguish all pre-existing liens or titles of every description.
It is unnecessary, in this review of the case, to consider the question of how far the special tax of 1870 was a legal one or not.
We think the claimant is entitled to the relief prayed for.