## ROWLETT v. NASH.

EJECTMENT; TAX DEEDS; TAX SALES; LANDLORD AND TENANT; ESTOPPEL; MARSHAL'S DEED.

1. In an action of ejectment, a tax deed made in 1897, and purporting to convey the title of the delinquent owner, who is the common source

of title, and mesne conveyances purporting to convey such title to the plaintiff, constitute a prima facie case of title in the plaintiff, under sec. 5 of the act of Congress of March 3, 1877 (19 Stat. at L. 396, chap. 117), providing that a tax deed shall be admitted and held to be prima facie evidence of a good and perfect title in fee simple, and all proceedings prior to said deed shall be presumed to be regular until the contrary be proven; and sec. 18 of that act, providing that such act shall remain in force for each subsequent year after June 30, 1878, until repealed.

2. An objection by the plaintiff in ejectment, who claims under a tax deed made in 1897, which is prima facie evidence of title, to the admission of evidence tending to show that a report of the listing, sale, etc., referred to in the tax deed, was made by the Commissioners of the District of Columbia instead of by the collector of taxes, as required by sec. 175, D. C. Rev. Stat., should be sustained, as that section was repealed by the act of Congress of March 3, 1877 (19 Stat. at L. 396, chap. 117), which covered the general subject-matter of the former tax laws, and became a substitute therefor until repealed by the act of Congress of February 28, 1898 (30 Stat. at L. 250, chap. 32), relating to taxes and tax sales in the District of Columbia. (Citing *United States ex rel. Bride* v. *Macfarland,* 18 App. D. C. 120.)

3. One who occupies the land of another in subordination to such other's title, and with his assent, becomes his tenant, so far, at least, as to estop him to deny the title; and this estoppel extends to anyone who enters under said tenant by assignment or purchase.

4. Where a person purchased from a tenant in possession of part of a lot, a house on the lot belonging to the tenant, in order to obtain surrender of possession by the tenant of such part of the lot, the purchaser is estopped to deny the title of one claiming under the landlord, so far as that part of the lot is concerned, in a subsequent action of ejectment by the landlord's grantee to recover possession of the lot; and a permit by the landlord to the tenant to remove a house onto a lot other than the one in controversy, offered in evidence by the defendant, is irrelevant and admissible.

5. Where the plaintiff in ejectment claims title under a tax deed, which shows the prima facie title to be in him, the defendant must show that the tax sale culminating in the deed was void for failure to comply with the requirements of the tax law in force when the deed was made.

6. A marshal's deed of land, which recites a levy upon and sale of the property under a judgment, is not sufficient to show title to the land to be in the grantee named in the deed, but the grantee, if he claims

to be the owner of the property, must prove the judgment and the execution.

No. 2385.    Submitted April 4, 1912.    Decided April 22, 1912.

HEARING on an appeal by the plaintiff from a judgment of the supreme court of the District of Columbia, on a verdict directed by the court, in an action of ejectment. *Reversed.*

The COURT in the opinion stated the facts as follows:

Mary S. Rowlett, plaintiff in an action of ejectment to recover possession of lot 5 in square 611 of the city of Washington, appeals from a judgment on a directed verdict for the defendant, Franklin P. Nash.

William Mayse is the common source of title. The bill of exceptions shows that plaintiff offered the following deeds: (1) From the Commissioners of the District, executed May 29, 1897, to John F. Shea, and duly recorded, reciting a sale of the lot for unpaid taxes assessed against the same as the property of William Mayse; (2) deed from the heirs at law of John F. Shea (who died intestate) to Galen E. Green, dated March 21, 1910; (3) deed from Galen E. Green to plaintiff, dated March 25, 1910. Plaintiff then offered testimony tending to show that in March, 1903, one Peter Young rented (without writing) said lot 5 from John F. Shea, and with his consent moved a house from its location on First street to the rear part of said lot, and lived therein. That defendant, Nash, claimed to Young that he was the owner of the lot, and desired that rent be paid to him, which Young refused to do. Later Nash commenced to build a house on a part of the lot, which Shea tore down. He then commenced to build a fence, which Shea also destroyed. After Shea's death Nash built two houses on the lot facing V street. He then offered Young $60 if he would move away and give him possession. Young accepted the offer and removed. The house belonged to Young and he had the right to sell it. Nash did not want the house; he

wanted possession of the ground. Said to Young's wife that she could have the lumber; he said he wanted the ground. Other evidence tended to show that Shea assessed the lot in his own name and paid the taxes to the time of his death. The defendant offered in evidence the record of the report of tax sale referred to in the tax deed to Shea, for the purpose of showing that the requirements of the law had not been complied with therein. Plaintiff objected to the evidence on the ground that the report was irrelevant, because the tax deed was made prima facie evidence of title by the act of 1877, and that by said act the requirement as to notice by the tax collector under the act of 1819 had been repealed. The objection was overruled, and exception noted. The report was then read, as follows:

Office of the Commissioners of the District of Columbia.
Washington, May 4, 1895.

We hereby certify that the above exhibit is a true statement of all property sold to individuals at the tax sale April 9th to 25th inclusive, 1895. All other property advertised and sold at said sale was bought for and by the District of Columbia.

John W. Ross.<br>George Truesdell.<br>Charles F. Powell.<br>Commissioners of the District of Columbia.

Real Estate Tax Sale, April 9 to 25th Incl., 1895.
District of Columbia.

| Date | Square | Lot | To whom assessed |
|------|--------|-----|------------------|
| April 11 | 611 | 5 | Mayse, William. |

| Items of Sale | Tax | Penalty or Interest | Adv. |
|---------------|-----|---------------------|------|
| All of tax for year ending June 30, 1894. | 2.25 | .63 | 1.20 |

| Amount sold for | Surplus | To whom sold |
|-----------------|---------|--------------|
| 4.08 | * * * | John F. Shea. |

Defendant then offered a deed executed by the marshal to the District, to said Franklin P. Nash, dated October 2, 1902. said deed recites the levy upon and sale of the lot under a judgment against William Mayse. The deed was objected to, but admitted in evidence, with exception by plaintiff noted. There was no proof of the judgment or of the execution, levy, advertisement, etc., recited in said deed.

Defendant offered a writing attached to an application by Peter Young for a permit to remove a frame house from one place to another, and proved the signature of John F. Shea thereto. The writing is as follows:

March 4, 1903.

This is to certify that we the undersigners and owners of the property that herein mention and we here grant Peter Young permish to move Fraim house No 2015 First Street S.W. Back on Lot 4 in Square 611. Peter Young: P. Dudley the contractor, 925 F. Str. S.W. William E. Horton: I am the only one that owns a house in 50 feet.

John F. Shea,
Owner of Lot 4 Sq. 611.

Plaintiff's objections thereto were overruled and exception taken.

Defendant testified on his own behalf that after the delivery of the deed by the marshal he took possession of the lot; that Peter Young then occupied a "shanty house" built partly on lots 4 and 5, the longer part on lot 5; that said lot 5 has a south frontage of 44 feet on V street and a depth of 114 feet; that said Young's "holding was 19 feet from the north line or back of said lot;" that soon after acquiring his deed he commenced to build a house on the lot, and later a fence, both of which Shea demolished; that in 1904 he built two houses and inclosed with a fence all that part of the lot extending back to the south line of Young's house, and has since occupied the same by tenants; that after building the houses, Young and wife sold him their house for $60, under an agreement to give him posses-

sion, which they complied with; that when Shea demolished
the first house and fence, defendant knew that Shea claimed ad-
versely to him; that defendant had paid all taxes on the lot
since 1905.

Plaintiff, in rebuttal, offered evidence tending to show that
the form of tax sale reports had been the same from 1879 to
date, and that several thousand tax sales had been made there-
under.

Upon the conclusion of the testimony, the court, upon mo-
tion of the defendant, directed the jury to return a verdict in
his favor.

*Mr. John Ridout* for the appellant.

*Mr. Arthur A. Birney* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the
Court:

Being of the opinion that it was error to direct the verdict
for the defendant, we shall confine our discussion to such ques-
tions raised by the assignments of error as may arise upon the
new trial that must follow.

1. The tax deed conveying the interest of William Mayse,
the common source, and the deeds vesting the interests of Shea's
heirs at law in the plaintiff, constituted a prima facie case of
title. Sec. 5 of "An Act for the Support of the Government of
the District of Columbia for the Fiscal Year Ending June 30,
Eighteen Hundred and Seventy-eight, and for other purposes,"
approved March 3, 1877 (19 Stat. at L. 376, chap. 117), pro-
vides that a tax deed "shall be admitted and held to be prima
facie evidence of a good and perfect title in fee simple to any
property bought at any sale herein authorized; and all pro-
ceedings prior to said deed shall be presumed to have been
regular until the contrary be proved."

The proceedings for the levy and collection of the tax upon
the lot in controversy, culminating in the deed made May 29,

1897, were governed by said act under the following provision of sec. 18: "This act shall remain in force as the tax law of the District of Columbia for each subsequent year after June 30, 1878, until repealed."

2. Defendant undertook to rebut the prima facie case of title, by proof that the report of listing, sale, etc., was made by the Commissioners of the District, instead of by the collector of taxes, as required by sec. 2 of the act of February 20, 1819, which is sec. 175, D. C. Rev. Stat. This revision and consolidation of the statutes relating to the District of Columbia was enacted December 1, 1873. The contention is that sec. 175 was not repealed by the act of March 3, 1877, but remained in force, and contained a substantial requirement, the failure to perform which rendered the tax sale and deed void. We do not agree with this contention. The act of 1877 provided a general and comprehensive system of procedure for the listing, advertisement, and sale of property for unpaid taxes, and as such was apparently intended to take the place of the former system. It covers the general subject-matter of the former tax laws with additions and modifications indicating that it was intended as a substitute therefor; and as such it was observed and followed until substituted, and thereby repealed, by the act of 1898. See *United States ex rel. Bride* v. *Macfarland,* 18 App. D. C. 120–125. That this was the intention of Congress was evidenced also by the declaration of the 18th section that the act shall remain in force as the tax law of the District for each subsequent year until repealed. This repeal was effected in the same manner by the act of 1898, as held in *United States ex rel. Bride* v. *Macfarland,* supra.

It was therefore error to admit in evidence the report of the Commissioners for the purpose stated, over the objection of the plaintiff.

3. Upon the assumption that the tax sale may possibly be hereafter shown to be void for failure to comply with some material requirements of the act of March 3, 1877, it would, nevertheless, be error to direct the jury to return a verdict for that part of lot 5 embraced in the "holding" of Young, the posses-

sion of which was acquired by defendant by purchase from Young. The induction of Young into possession by Shea constituted him the tenant of the latter, in so far as to estop him from denying Shea's title. Tenancy for such purpose does not necessarily mean a regular lease and the payment of rent. It may be implied, unless negatived by the terms of the contract under which possession was given. *Carpenter* v. *United States,* 17 Wall. 489–493, 21 L. ed. 680, 681; *Wiggins Ferry Co.* v. *Ohio & M. R. Co.* 142 U. S. 396–407, 35 L. ed. 1055–1059, 12 Sup. Ct. Rep. 188. One who occupies the land of another in subordination to that other's title, and with his assent, becomes his tenant, so far, at least, as to estop him to deny the title. And this estoppel extends to anyone who enters under said tenant by assignment or purchase. *Rector* v. *Gibbon,* 111 U. S. 276–284, 28 L. ed. 427–430, 4 Sup. Ct. Rep. 605. Assuming then, but without intending to decide, that defendant entered upon lot 5 under color and in good faith, and ousted plaintiff from all that part of the same embraced in his improvements, he did not acquire Young's holding thereby. On the contrary, the evidence shows that he purchased Young's house and induced him to surrender possession for that consideration. His object was to come into possession of Young's holding in that way, and by doing so he came under the estoppel that bound Young. The indorsement on the application of Young to move a house onto lot 4, square 611, does not of itself contradict the evidence of the agreement between Shea and Young for the occupation of the part of lot 5 and was therefore irrelevant.

4. It seems improbable that the question of defendant's right to the claim of color of title under the marshal's deed will arise in another trial. There is no question of limitation in the case. To overcome the prima facie title of plaintiff, the defendant must show the tax sale to be void for failure to comply with the requirements of the law of March 3, 1877. Were it necessary for defendant to show title, the marshal's deed alone would not be sufficient for that purpose. There must be proof

of the judgment and execution on which the deed is founded. *Remington* v. *Linthicum,* 14 Pet. 84–92, 10 L. ed. 364–368.

It follows that the judgment must be reversed, with costs, and the cause remanded with direction to set aside the verdict and award a new trial.                    *Reversed.*