14715

CARTER v. WROTEN ET AL.

(198 S. E., 13)

*Messrs. Thomas & Thomas,* for appellant,

*Mr. W. W. Elliott,* for respondent,

July 6, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The appellant brought this action to recover possession of nineteen acres of land on St. Helena Island, in Beaufort County, formerly owned by Berry Wroten, deceased, who died intestate some time prior to 1927. The respondents are grandchildren and heirs-at-law of Berry Wroten, and are in the possession of the land in dispute, having lived thereon, with their said grandfather until his death, and continuously since that time. In 1928 the tract was sold for delinquent taxes by the sheriff of Beaufort County, to Henry L. Bowles, and was later acquired by the appellant. On the trial of the case, she introduced in evidence, as a link in her chain of title, the tax title given to Bowles by the sheriff. The sheriff's deed conveying the land to Bowles is regular in form and recites that the tract was seized by the sheriff on August 15, 1928, under a tax execution issued to him by the treasurer of Beaufort County, for delinquent taxes due by the *estate of Berry Wroten, deceased,* for the year 1927; that it was sold on salesday in November, 1928, to C. H. Evans for

the sum of $24.00, he being the highest bidder, and that Evans assigned his bid to Henry L. Bowles.

It was shown that the property was listed, assessed, levied upon and sold as the land of the estate of Berry Wroten, and it further appeared that his estate, at the time of such listing and assessment, had not been administered upon. It does not appear who returned the land for taxation. The main issue made by this appeal is that the property was not sold in the name of the real owner, as required by the statute.

In addition to the foregoing facts, the appellant introduced evidence tending to show that the defendant, Wayman Wroten, applied to C. H. Evans prior to the sale, for a loan with which to buy in the land, but Evans refused to make the loan. Evans testified that he told Wroten that he would buy the property in at the tax sale, and would assign the bid to him if he could later raise the money. The money was not forthcoming, and Evans later assigned his bid to Henry L. Bowles, who, as already stated, received the tax title from the sheriff.

This appeal is from an order of nonsuit granted by the Circuit Judge upon motion of the defendants, wherein he held that the tax sale did not divest the title of the defendants in the land, and that the sheriff's deed was invalid and void. This decision was predicated upon the fact that the land levied upon and sold for taxes, was returned and assessed therefor as land of "the *estate of Berry Wroten, deceased,*" and not in the name of the true owners.

The appellant in this Court, as in the Court below, is in the same position that Henry L. Bowles would occupy if he had brought the suit to recover the possession of the land from the respondents.

By the common law, and under the statutes in most of the states, the title to real property vests in the heirs immediately on the death of the intestate, subject in most jurisdictions, as in South Carolina, to the exercise of such special powers as may be conferred upon the ad-

ministrator by statute, such as the right to sell for payment of debts.

A different rule prevails with reference to personal property. *Darwin v. Moore,* 58 S. C., 164, 36 S. E., 539; *Richardson v. Cooley,* 20 S. C., 347; *McVaughters v. Elder,* 2 Brev., 307.

Title to real estate cannot remain in abeyance; it must be vested in someone. When, therefore, a person seized of real estate dies intestate, the title to such estate vests at once in his heirs, if he leaves any. *In re. Malone's Estate,* 21 S. C., 435.

Therefore, when Berry Wroten died intestate, the title to the land in dispute descended and immediately vested in his heirs-at-law, and it is admitted that the respondents come within this class. So that the sole point involved, subject to one or two minor questions, is, whether the Circuit Judge was correct in holding that the sheriff's tax title was invalid because of the fact that the land it purported to convey was assessed, levied upon, and sold in the name of *the estate of Berry Wroten, deceased,* and not in the name of his heirs-at-law, who held the legal title, and had the right of possession.

Section 2605 of our 1932 Code prescribes the manner in which property must be listed and returned for taxation. It reads as follows: "All persons required by law to list property for others shall list it separately from their own, and in the name of the owner thereof; but shall be personally responsible for the taxes thereon for the year in which they list it, and may retain so much thereof, or the proceeds of the sale thereof, in their own hands, as will be sufficient to pay such taxes: *Provided, That all lands shall be listed and assessed as the property of the person or persons having the legal title to, and the right of possession of, the land at the time of listing and assessment,* and in case of persons having possession of lands for life, in the name of the life tenant: *Provided, further, That in the case of estates administered, the property shall be listed and assessed as the property of*

*'the estate of'* the *person deceased;* that in case of trust, the property shall be listed and assessed as the property of the trustee, styled as trustee, committee, or guardian, as the case may be; and that in case of bankruptcy, the property shall be listed and assessed as the property of the bankrupt. And any one who shall knowingly return land in the name of one not having the legal title to, and right of possession of, the land at the time of listing and assessment as provided in this section, shall be liable in an action of damages in an amount at least equal to the tax assessed at the suit of the one entitled to the possession of said land."

In *Pollitzer v. Beinkempen,* 76 S. C., 517, 57 S. E., 475, the question was whether a tax sale was good, where the land had been returned, assessed and sold as the property of "the estate of" a person deceased. It appeared in that case, that the estate of the deceased person *had been administered upon,* was in process of administration, and such sale was held to be good under the proviso of the statute which makes the exception, "that in the case of estates administered, the property shall be listed and assessed as the property of 'the estate of' the person deceased."

That case fell strictly under the proviso, inasmuch as the estate of the deceased owner was an estate upon which there was administration. In the case at bar, there was not only no proof of administration on the estate of Berry Wroten, deceased, but the admission was made that there had been no administration, and therefore this case falls without the exception mentioned in the proviso referred to. It is obvious that it comes within the first proviso of the statute.

It is apparent that this controversy is narrowed down to this question: Was the legal title to, and the right of possession of the land in dispute *in the estate of Berry Wroten, deceased,* at the time of. its listing and assessment? In view of the statute referred to, and the cases cited, it must be held under the law and the evidence that the legal title to this land and the right of possession were in the respondents,

and that therefore the sheriff's tax title did not convey the title to the land in suit, because it was not returned in the name of the true owner; unless the respondents are estopped by the other facts appearing in the record, which we shall shortly discuss.

The estate of a deceased person, as commonly understock, consists of real and personal property, choses in action, debts, etc. An estate as such cannot hold legal title to lands, because it is neither a person nor a legal entity. It was pointed out very clearly in *Koth v. Pallachucola Club,* 79 S. C., 514, 61 S. E., 77, that lands may be returned for taxation as the property of "the estate of" the person deceased, only where there has been an administration of such estate, and that the return is authorized to be made in this wise solely because of the legislative requirement appearing in the proviso of the statute we have quoted. That statute, without ambiguity, and by clear import, provides that where there has been no administration of the estate of a person dying intestate, the land must be assessed in the name of the real owner, that is, the person or persons having the legal title to and the right of possession of the same.

In *Koth v. Pallachucola Club, supra,* the question was whether, in case there has been no administration, a good tax title can be made to land assessed, levied on, and sold, after the death of the owner, as the lands of the *heirs* of such deceased owner, without mentioning the name of each of the heirs. The Court held that (page 78) "designating the owners on the tax books, in the execution and in the advertisement as heirs of a particular person deceased, is notice to all such heirs that land in which they are interested is assessed for taxes, and will be sold unless the taxes are paid." The Court in that case further said: "It would be unreasonable to require tax officers to unravel complicated inheritances and state on the tax list the Christian and family names of all the heirs of persons deceased. To construe the provisions of the statute on the subject manda-

tory to that degree would unreasonably embarrass the state in the collecion of its revenue."

The term, "the estate of" is not synonymous with or equivalent to the word "heirs" so as to designate a person or persons who hold title to land. The word "heirs" connotes living persons who may take as distributees at law, whereas the term, "the estate of" a deceased person is merely indicative of the subject-matter which the heirs may take by inheritance.

This Court would not be justified, by judicial interpretation, in sanctioning such a radical departure from the specific requirements of the statute, as is contended for by the appellant. The property of those alone, whose names are on the tax lists, is subject to sale for non-payment of taxes. As held in *Koth v. Pallachucola Club, supra,* the word "heirs" of a deceased person in the case of estates not administered upon is a sufficient naming, for the reasons therein stated; but the phrase, "estate of" does not refer, by any reasonable intendment, to a person or persons, and is permissible only in the case of estates administered upon as provided by the statute.

In the case of *Smith v. Cox,* 83 S. C., 1, 65 S. E., 222, one of the reasons why the purchaser at the tax sale therein mentioned, was not allowed to hold possession of the property against the owner, was because the sale of land under a tax execution, on an assessment against one not the owner, is void. Also see *Taylor v. Strauss,* 95 S. C., 295, 78 S. E., 883, announcing the same principle.

The appellant asserts that the respondents are estopped by their conduct to impeach or deny the validity of the tax title executed and delivered by the sheriff to Henry L. Bowles, under which the appellant claims title to the property in dispute. It must be borne in mind that the respondents had no part in the tax proceedings which culminated in the sale of the property. The sale did not spring from any act of theirs, but by authority of law. The respondents made no representations to Mr. Evans, the suc-

cessful bidder at the sale, false or otherwise, with reference to the title. Nor did they say or do anything to mislead the tax officials. Evans was not misled, and lost nothing by the transaction. In this case, the elements of estoppel are not present.

The identical question, in effect, was before the Court in *Parker et al. v. Horton et al.*, 114 S. C., 313, 103 S. E., 546, and was there decided adversely to the appellant's present contention.

We find no error in the judgment of the lower Court, and must, therefore, overrule the exceptions.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.

MR. JUSTICE CARTER did not participate on account of illness.