**W. C. & A. N. MILLER DEVELOPMENT CO. v. EMIG PROPERTIES CORPORATION.**

No. 7802.

United States Court of Appeals for the District of Columbia.

Decided Feb. 1, 1943.

Writ of Certiorari Denied Apr. 12, 1943.

See 63 S.Ct. 983, 87 L.Ed. ——.

Mr. George C. Gertman, of Washington, D. C., for appellant.

Mr. Walter R. Schoenberg, with whom Mr. Byron G. Carson was on the brief, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

Plaintiff, Miller Development Co., seeks to have a tax deed from the Commissioners of the District of Columbia to the defendant, Emig Properties Corporation, declared invalid and the cloud created thereby on plaintiff's title to the property removed. The District Court held that the irregularities complained of do not invalidate the deed and dismissed the complaint. We affirm the decree.

The property, described in the complaint according to the records of the surveyor's office, is designated on the assessor's books for tax purposes as Lots 21 and 22 in Square 1476. Both lots were unimproved.

Plaintiff claims by mesne conveyances from the record holders of the titles in 1895. These were Mary J. B. Wright, owner of Lot 21, and her sister Martha L. Campbell, owner of Lot 22. Plaintiff also derives title through a tax deed issued pursuant to sales made in 1923 for nonpayment of taxes for the fiscal year ending June 30, 1922. Defendant claims under a tax deed issued to it in 1934 for nonpayment of taxes for the fiscal year ending June 30, 1931.

In brief, plaintiff contends defendant's deed is invalid because the lots were not assessed for the 1931 taxes in the names of their owners as required by statute; because the tax records show that the property had been redeemed from the sale when the defendant's deed was issued; and because the sale was a private one, not made in accordance with the Act of February 14, 1929, 45 Stat. 1173, which provides for sale through court proceedings. The last argument is that the 1929 Act repealed the pre-existing statute of 1902, cited later, in so far as it provided for private sales. The first argument, that the lots were not assessed in the names of the owners, requires for clarity delineation in detail of plaintiff's acquisition of title from the record owners, Mary J. B. Wright and Martha L. Campbell, and from the grantee in the tax deed issued pursuant to the sale for nonpayment of the 1922 taxes. Accordingly we set forth these chains of title and also that under which defendant claims.

Plaintiff acquired title from the record owners in 1895 as follows:

Lot 21. Mary J. B. Wright acquired the record title to Lot 21 in 1895. She died testate on March 13, 1921. By her will, probated on March 21, 1930, she devised Lot 21 to her sister Martha L. Campbell for life, with remainder in fee to Kate Wertz Fleck and her husband, Harry S. Fleck, equally. Harry S. Fleck and Kate Wertz Fleck by deed dated May 24, 1930, and recorded July 10, 1935, conveyed Lot 21 in fee to Frances J. Tarrant, who conveyed to the plaintiff in fee the following September.

Lot 22. Martha L. Campbell acquired the record title to Lot 22 in 1895. She died testate on December 1, 1918. By her will,

probated March 21, 1930, she devised Lot 22 to her sister Mary J. B. Wright for life, with remainder in fee to Harry S. Fleck as trustee, in trust for J. Hurst Campbell during his life, upon his death one-half to Kate Wertz Fleck and the remaining one-half among the three children of Edith Wertz Irwin, deceased. J. Hurst Campbell subsequently died. By deed dated December 12, 1931, and recorded July 10, 1935, Kate Wertz Fleck, the children of Edith Wertz Irwin, and Harry S. Fleck, under the authority of court decree in Equity Cause 52117 dated November 9, 1931, conveyed Lot 22 in fee simple to Frances J. Tarrant. She conveyed it to the plaintiff in September, 1935.

Plaintiff acquired title pursuant to the sale for 1922 taxes in the following manner: Lots 21 and 22 were assessed for taxes on July 1, 1921, for the fiscal year ending June 30, 1922, in the names of Mary J. B. Wright and Martha L. Campbell, respectively. These taxes not having been paid, the lots were advertised for sale in the names of Mary J. B. Wright and Martha L. Campbell, and were bought in by the Commissioners at a tax sale held on June 10, 1923. Thereafter by deed dated April 23, 1929, and duly recorded the Commissioners conveyed both lots to James S. Fraser and his wife. On November 7, 1929, they conveyed Lots 21 and 22 to Harry S. Fleck. He in turn conveyed his tax title to Frances J. Tarrant, by the deeds referred to above in which his wife and the children of Edith Wertz Irwin joined, executed in 1930 and 1931, and recorded in 1935. The deed from Frances J. Tarrant to plaintiff, executed and recorded in 1935, purports to convey all the title she possessed in Lots 21 and 22.

Defendant acquired title in the following manner: Lots 21 and 22 were assessed for taxes on July 1, 1930, for the fiscal year ending June 30, 1931, in the name of Harry S. Fleck. The assessments not having been paid, the lots were advertised for sale in the name of Harry S. Fleck. There being no purchaser, the lots were bought in again by the Commissioners at a public sale held on January 14, 1932. On February 18, 1934, defendant wrote the Commissioners offering to purchase Lots 21 and 22 for "whatever taxes may be due the District." Pursuant to this letter, the Commissioners entered the following order: "Ordered that in accordance with Section 3, Act of July 1, 1902, permission is hereby granted Clayton E. Emig to purchase at private sale Lot 21 Square 1476, Lot 22 Square 1476 * * * upon payment of 'all assessments, taxes, costs and charges due the District of Columbia of whatsoever nature' in full; provided, however, that no deed shall be issued on these lots if the taxes are paid by the owners thereof prior to the issuance of a deed." The Commissioners by deed dated March 17 and recorded March 20, 1934, conveyed Lots 21 and 22 to the defendant for all the taxes due thereon together with interest and costs for the fiscal years ending June 30, 1931, and June 30, 1934. On March 17, 1934, the date of the deed, the taxes levied against the lots for the first and second halves of the year ending June 30, 1934, were not in arrears, the lots had not been advertised for sale and had not been purchased by the Commissioners at any tax sale arising from nonpayment of 1934 taxes. But defendant paid the 1934 taxes as part payment for the tax deed.

For the fiscal year of 1940, Lot 21 was assessed for taxes at a valuation of $825 and Lot 22 was assessed at a valuation of $500, both lots being assessed as unimproved. At the trial plaintiff tendered defendant all taxes, interest and costs paid by it in connection with Lots 21 and 22 both prior and subsequent to the date of defendant's tax deed. Both plaintiff and defendant exhibited receipts for the taxes since 1935.

Plaintiff first says defendant's deed is invalid because the lots were not assessed on July 1, 1930, for the 1931 taxes, in the names of their owners as required by statute, i. e., under the wills of Mary J. B. Wright and Martha L. Campbell.[1] The wills, probated on March 21, 1930, placed record title to Lot 21 in Harry S. Fleck and his wife Kate Wertz Fleck as tenants in common and to Lot 22 in Harry S. Fleck, in trust for Kate Wertz Fleck, John Irwin,

---

[1] D.C.Code (1940) § 47—701 [D.C.Code (1929) tit. 20, § 696] provides as follows: "All real property in the District of Columbia, except as hereinafter provided, shall be assessed in the name of the owner, or trustee or trustees of the owner thereof. All undivided real property of a deceased person may be assessed in the name of such deceased person until the same is divided, according to law, or has otherwise passed into the possession of some other person or persons; and all real property, the ownership of which is unknown, shall be assessed 'owner unknown.' "

Gwendolyn Irwin, and Lenore Irwin, who were the children of Edith Wertz Irwin. On July 1, 1930, Harry S. Fleck also held the tax title to the lots by deed, dated November 7, 1929, which he had received from James S. Fraser and wife. The assessment made July 1, 1930, for both lots was in the name of Harry S. Fleck.

It is not contended there was any irregularity in the tax deed to James S. Fraser and his wife. It was proper for the Commissioners to assess the lots for the 1922 taxes in the names of the deceased "owners" because the wills had not then been probated, and it is not shown that the Commissioners were given notice of their deaths or who were to be "owners" under their wills.[2] Therefore, it would have been proper to assess the 1931 taxes in the name of the tax title holder if that person had been a stranger to the record title under the wills.[3] The conveyance to James S. Fraser was made in accordance with Section 793 of Title 20 of the 1929 Code providing that such a deed shall be "prima facie evidence of a good and perfect title in fee simple."[4] Title evidenced by a tax deed given in compliance with the statutory requirements expunges all the interests which spring from the record title and vests in the holder a new and complete title to the property in fee simple.[5]

[2] Ibid.

[3] Washington v. Pratt, 1823, 8 Wheat. 681, 682, 5 L.Ed. 714; Marx v. Hanthorn, 1893, 148 U.S. 172, 13 S.Ct. 508, 37 L. Ed. 410; Kann v. King, 1905, 25 App. D.C. 182, 185, reversed on other grounds, 1907, 204 U.S. 43, 27 S.Ct. 213, 51 L. Ed. 360; and Bursey v. Lyon, 1908, 32 App.D.C. 231, 241, do not require invalidation of the 1932 assessment. Plaintiff's argument on the basis of the Kann and Bursey cases is made for invalidity of the July 1, 1930, assessment. In the Kann case the "owner" of the property was a Mrs. Kennedy, who had inherited it in 1871 from a relative, Maria T. Gillis. On the assessment book of the District the property continued to be assessed in the name of Maria T. Gillis until 1899 when it was advertised and sold in the same name for taxes. The facts are not clear as to possession. In the Bursey case the property was assessed in the name of a person who had never been connected with the property when the names of the "owners" were ascertainable. In this case the deceased "owners" had been nonresidents and the lots were unimproved. Hence no one was in ostensible possession. Until the wills have been probated in the District, or notice has been given the assessor in some manner, or the property has passed into possession of other persons, Section 47—701 does not require the assessment in the names of the deceased "owners" to be declared invalid. Rather it expressly provides for assessment in the name of the deceased person "until the same is divided, according to law, or has otherwise passed into the possession of some other person or persons." But see Note (1939) 119 A.L. R. 379, 383, in which it is stated the great majority of cases hold such an assessment to be void. E. g., Carter v. Wroten, 1938, 187 S.C. 432, 198 S.E.

13, 119 A.L.R. 379; Morrill v. Lovett, 1901, 95 Me. 165, 49 A. 666, 56 L.R.A. 634; Scott v. Brown, 1894, 106 Ala. 604, 17 So. 731; cf. New Orleans v. Stemple, 1899, 175 U.S. 309, 20 S.Ct. 110, 44 L. Ed. 174. But the legislature may validate such an assessment in the name of the deceased "owner" or to the estate. See Pollitzer v. Beinkempen, 1907, 76 S. C. 517, 57 S.E. 475; Husbands v. Polivick, 1906, 128 Ky. 652, 96 S.W. 825; In re Crafts, 1918, 41 R.I. 63, 102 A. 753; Coles' Heirs v. Jamerson, 1911, 112 Va. 311, 71 S.E. 618, 50 L.R.A.,N.S., 407; Windsor v. Bedortha, 1942, 128 Conn. 551, 24 A.2d 474; Victory v. State, 1942, 138 Tex. 477, 158 S.W.2d 760, 764; cf. Grant v. Bartholomew, 1899, 57 Neb. 673, 78 N.W. 314; Young v. Marshall, Tex.Civ.App.1917, 199 S.W. 1180; Sanders v. Carley, 1903, 83 App. Div. 193, 83 N.Y.S. 106, affirmed 1904, 178 N.Y. 622, 70 N.E. 1108.

[4] Luchs v. Christman, 1914, 42 App. D.C. 326, 330; Rowlett v. Nash, 1912, 38 App.D.C. 598; cf. Brewer v. District of Columbia, 1886, 5 Mackey 274, 16 D. C. 274.

[5] E. g., Brewer v. District of Columbia, 1886, 5 Mackey 274, 16 D.C. 274; Means v. City of Boone, 1932, 214 Iowa 948, 241 N.W. 671; Thompson v. Henderson, 1928, 155 Md. 665, 142 A. 525, 58 A.L. R. 1213; Bryan v. Bryan, 1934, 206 N. C. 464, 174 S.E. 269; People of Porto Rico v. Livingston, 1 Cir., 1931, 47 F.2d 712, certiorari denied, 1931, 284 U.S. 642, 52 S.Ct. 23, 76 L.Ed. 546; Barthold v. Dover, La.App.1934, 153 So. 49; Eisenhut v. Marion De Vries, Inc., 1934, 150 Misc. 804, 269 N.Y.S. 483, affirmed, 1934, 243 App.Div. 539, 276 N.Y.S. 602; cf. Thomas & Bullis v. Stricker Land & Timber Co., 1935, 181 La. 784, 160 So. 413. See Authorities in Maguire and Magill, Cases on Taxation (1940) 260n. Compare D.C.Code (1940) § 47—1014.

40

■ Plaintiff refers to the deeds from James S. Fraser and his wife to Harry S. Fleck as "redemption deeds." It is assumed, without decision, that the other interests of the record·title, under the wills of Mary J. B. Wright and Martha L. Campbell, would have been entitled to protection against Harry S. Fleck as the holder of the tax title secured from James S. Fraser and his wife, who had purchased the property after the redemption period had elapsed.[6] But this does not require that the Commissioners be burdened with searching out the interests under the wills and making a decision on their validity in view of their apparent extinction by a valid tax title to a stranger.[7] The burden was on Harry S. Fleck, as trustee, not upon the Commissioners, for the protection of the beneficial interests.[8] However, this case is made easier because, even if assessment in the names of the record holders under the wills were required, the 1931 assessment in the name of Harry S. Fleck would be proper as to Lot 22, being in the name of the trustee,[9] and the only irregularity would be that the designation of Lot 21 did not include the name of Kate Wertz Fleck, the wife of Harry S. Fleck. Such an irregularity should not invalidate the assessment, in view of the laches in the nonpayment of taxes from 1921 to 1929 and again from 1931 to 1934.[10] Assessment in this manner

[6] As to the right of a tenant against a cotenant acquiring an outstanding title or lien, cf., e. g., Gilb v. O'Neill, 1932, 225 Ala. 92, 142 So. 397, 85 A.L.R. 1526; Kline v. Wright, D.C.E.D.Idaho 1930, 42 F.2d 927; Terrell v. Terrell, 1927, 220 Ky. 717, 295 S.W. 1016; Fleming v. Casady, 1926, 202 Iowa 1094, 211 N.W. 488, 494; Willoughby v. Brandes, 1927, 317 Mo. 544, 297 S.W. 54; Erwin v. Williams, 1942, 199 S.C. 38, 18 S.E.2d 598. The relationship is one of trust. Fleming v. Casady, supra. But there are limitations to the rule. Cf. Waters v. Kopp, 1910, 34 App.D.C. 575, appeal dismissed, 1912, 223 U.S. 746, 32 S.Ct. 533, 56 L. Ed. 640; Wells v. Chapman, 1852, 13 Barb., N.Y., 561; Coleman v. Coleman, 1835, 3 Dana, Ky., 398, 28 Am.Dec. 86. And a few jurisdictions, upon expiration of the redemption period and sale to a stranger, hold the trust relation between cotenants terminated. Cf., e. g., In re Reynold's Estate, 1913, 239 Pa. 314, 86 A. 858; Alexander v. Sully, 1878, 50 Iowa 192. See extensive Notes in (1928) 54 A.L.R. 876, (1933) 85 A.L.R. 1536.

As Harry S. Fleck received Lot 22 in trust for J. Hurst Campbell, remainder in fee to Kate Wertz Fleck, John Irwin, Gwendolyn Irwin, and Lenore Irwin, he had a duty to protect the interests of the beneficiaries. See 3 Bogert, Trusts and Trustees, 1935, §§ 595, 602; 2 Scott, Trusts (1939) § 176.

[7] Except for the intervening tax deed the assessor would be required to ascertain the real owners following the date the wills were probated through the sources provided by statute, Section 47—403, D.C.Code, 1940 (Section 673, Title 20, D.C.Code, 1929), Daily Transcript from Records of Recorder of Deeds and Register of Wills, in conjunction with Section 47—407, D.C.Code, 1940 (Section 677, Title 20, D.C.Code, 1929), Surveyor's Office to make Daily Transcript of Records of Deeds, Wills, Condemnations, and Decrees.

[8] See note 6 supra.

[9] Section 47—701, 1940 Code, provides that assessment shall be "in the name of the owner, *or trustee or trustees of the owner thereof*." (Italics supplied) Since the trustee is the legal "owner" of the property and as such liable for the payment of the taxes and responsible for preservation of the property, assessment in the name of the trustee is valid, without designating his capacity or the names of the holders of the beneficial interest. 3 Bogert, Trusts and Trustees, 1935, § 602; 2 Scott, Trusts (1939) §§ 176, 265. For cases, see, e. g., Dunham v. City of Lowell, 1909, 200 Mass. 468, 86 N.E. 951; Hills v. City of Muskegon, 1909, 158 Mich. 551, 123 N.W. 21; Ellsworth College of Iowa Falls v. Emmet County, 1912, 156 Iowa 52, 135 N.W. 594, 42 L. R.A.,N.S., 530; Assessors of Boston v. Neal, 1942, 311 Mass. 192, 40 N.E.2d 893; cf. Millsaps v. City of Jackson, 1901, 78 Miss. 537, 30 So. 756; State v. Clark, 1936, 77 Minn. 190, 79 N.W. 829; Animal Rescue League v. Bourne's Assessors, 1941, 310 Mass. 330, 37 N.E. 2d 1019, 138 A.L.R. 110; McClellan v. Board of Review of Jo Daviess County, 1902, 200 Ill. 116, 65 N.E. 711; Frye v. Burke, 1936, 57 Ohio App. 99, 12 N. E.2d 152, 158; Ceepeear School District v. Security Trust Co., [1919] 1 West. Week. Rep. 615.

[10] Under these circumstances such an assessment is valid as being in the name of the "owner." See Smith v. Russell, 1916, 172 App.Div. 793, 159 N.Y.S. 169, assessment of estate by entirety in the name of the husband valid. See also Old v. Norfolk, 1942, 178 Va. 378, 17 S.E.2d 427. See Note, Scope and Import of Term "Owner" in Statutes Relating to Real

would be clearly sufficient to give due notice of the assessment.[11]

The 1931 assessment being valid we now turn to the propriety of the sale to the defendant on March 17, 1934. The lots were advertised for sale in the name of Harry S. Fleck. They were put up at public auction January 14, 1932, and purchased by the District Commissioners. The two-year statutory period of redemption ended therefore on January 14, 1934.[12] But plaintiff assigns as error the fact that the "sale made January 14, 1932 to the District of Columbia for the taxes for the fiscal year 1931 stood redeemed on March 10, 1934 upon the tax records which the law required the Assessor to keep." The undisputed testimony of the chief clerk of the tax arrears division and the trial court's finding of fact show the amounts entered in the "Tax Sale Record" in the column entitled "Date of Redemption" were the amounts for the 1931 taxes paid by defendant in return for the tax deed. The "Date of Redemption" column is used for both genuine redemptions within the statutory period and payments made upon the issuance of tax deeds.

The tax sale in March 17, 1934, to defendant was made in accordance with an exchange of letters between the defendant and the Commissioners. The sale was made in accordance with Section 3, Act of July 1, 1902, 32 Stat. 633, D.C.Code (1929) Title 20, Section 793 which is the same in substance as Section 47—1003 of the 1940 Code.[13] Also in existence in 1934 was the Act of February 14, 1929, 45 Stat. 1173, which has been superseded by the Act of March 2, 1936, 49 Stat. 1153, D.C.Code (1929) Title 20, Section 800, D.C.Code (1940) Sections 47—1011 to 47—1014. Section 2 of the Act of 1929 provided that "all * ° * * Acts inconsistent herewith are hereby repealed." Plaintiff assumes therefore that Section 2 of the 1929 Act was intended to repeal the 1902 Act, then Section 793 of the 1929 Code.

The 1902 Act [D.C.Code (1929) Tit. 20, Sections 791–793, D.C.Code (1940) Sections 47—1001 to 47—1003] provides in part for a public sale of the delinquent tax property and *"no property * * * shall be sold upon any bid not sufficient to meet the amount of the tax, penalty, and costs;* but in case the highest bid on any property is not sufficient to meet the taxes, penalties, and costs thereon said property shall thereupon be bid off * * * in the name of the District of Columbia; *but the property so*

---

Property (1919) 2 A.L.R. 778, (1935) 95 A.L.R. 1085.

Harry S. Fleck and Kate Wertz Fleck conveyed their record title to Lot 21, under the will of Mary J. B. Wright, to Frances J. Tarrant by deed dated May 24, 1930, which was previous to the assessment on July 1, 1930. However, this deed was not recorded until July 10, 1935. This would not affect the validity of the assessment. Cf. Millerson v. T. W. Doherty Land & Cattle Co., Mo.Sup.1922, 241 S.W. 907; Pennsylvania Co. for Insurances, etc., v. Bergson, 1932, 307 Pa. 44, 159 A. 32; Saftel v. Newton Savings Bank, 1926, 254 Mass. 516, 150 N.E. 433. Harry S. Fleck conveyed his tax title to Frances J. Tarrant on December 12, 1931. The deeds were not recorded until July 10, 1935. See text, supra.

[11] As to due process of law, cf. Castillo v. McConnico, 1898, 168 U.S. 674, 18 S. Ct. 229, 42 L.Ed. 622; Ontario Land Co. v. Yordy, 1909, 212 U.S. 152, 29 S.Ct. 278, 53 L.Ed. 449, affirming, 1906, 44 Wash. 239, 87 P. 257; Saranac Land & Timber Co. v. Roberts, 1900, 177 U. S. 318, 20 S.Ct. 642, 44 L.Ed. 786; Keely v. Sanders, 1879, 99 U.S. 441, 443, 25 L.Ed. 327. But see Bryson v. McCoy, 1927, 194 N.C. 91, 138 S.E. 420; Carr v. Barton, 1935, 173 Miss. 662, 675, 162

So. 172, 176; Federico v. Nunez. 1932, 173 La. 957, 139 So. 18. As to description of property, see Notes (1930) 67 A. L.R. 890, (1919) 1 A.L.R. 1228. Many states have statutes that no assessment shall be considered invalid because not assessed or listed in the name of the "owner." See, e. g., Jones v. Box Elder County, 10 Cir., 1931, 52 F.2d 340, 342, certiorari denied, 1932, 285 U.S. 555, 52 S.Ct. 456, 76 L.Ed. 944; Sutter v. Scudder, 1940, 110 Mont. 390, 103 P.2d 303; Sims v. Vosburg, 1939, 43 N.M. 255, 91 P.2d 434, 436; Victory v. State, 1942, 138 Tex. 477, 158 S.W.2d 760, 764; Interstate Realty & Improvement Co. v. Clark, 1926, 77 Cal.App. 558, 247 P. 244; cf. Witherhead v. Ort, 1928, 223 App. Div. 626, 229 N.Y.S. 315, affirmed, 1928, 249 N.Y. 567, 164 N.E. 586. Other jurisdictions consider the requirement of assessment in the name of the "owner" is directory only. E. g., Swearingen v. McCartan, 1939, 186 Okl. 241, 96 P.2d 1061, 1064; Sykes v. Beck, 1903, 12 N.D. 242, 96 N.W. 844, 848.

[12] See D.C.Code (1940) §§ 47—1003, 47—1011.

[13] The 1902 Act was passed originally in 1898, 30 Stat. 250, but it is referred to herein as the 1902 Act.

*bid off shall not be exempted from assessment and taxation, but shall be assessed and taxed as other property;* and *if within two years thereafter such property is not redeemed* by the owner or owners thereof, * * * by the payment of the taxes, penalties and costs due at the time of the sale and that may have accrued after that date * * * then the commissioners of the District * * * *shall* in the name of and on behalf of the District of Columbia, sell said property at *public* or *private sale* and issue to any purchaser of such property a deed * * *; *Provided, however,* That no *deed shall be issued until all assessments, taxes, costs, and charges due the District * * * shall have been paid in full * ***. (Italics supplied)

The 1929 Act (45 Stat. 1173), which plaintiff asserts repeals the 1902 Act, was entitled "An Act to provide an *additional method* for collecting taxes in the District of Columbia, and for other purposes." (Italics supplied) It provided in part that "whenever any real estate in the District of Columbia has been or shall hereafter be sold for nonpayment of taxes or assessments * * * and shall have been bought in by the District of Columbia, and more than two years shall have elapsed since such bidding in, and the same has not been redeemed in the manner and on the terms provided by law, the Commissioners of the District of Columbia *may*, in the name of and on behalf of the District of Columbia, apply to the Supreme Court [District Court] of the District of Columbia, sitting in equity, for the purpose of enforcing such tax lien by the said District of Columbia on the aforesaid property; and up to the time of the sale hereinafter provided for, such property may be redeemed by the owner thereof by the payment of the taxes and all legal penalties and costs thereon * * *. *No sale shall be made, unless by express order of the court, for an amount less than such aggregate taxes, interest, and costs of suit, including advertising and sale. * * ** On confirmation of the sale by the court, the court shall cause to be issued to the purchaser, when he shall have paid the purchase money and complied with the terms of sale, a deed to be executed by the clerk of the court which shall have the effect to convey to the purchaser *all the right, title, and estate of all parties defendant, whether proceeded against as known or unknown.*" (Italics supplied)

A comparative analysis of the two tax statutes shows clearly that the 1902 Act is not inconsistent with the 1929 Act and that the latter was not intended to repeal the former. As is noted above, the 1929 Act is entitled one to provide "an additional method for collecting taxes." Since the 1902 Act was the only other statutory method for collecting taxes by sale of real estate, it seems clear that the two Acts were to stand together. It cannot be assumed that Congress intended to repeal the 1902 Act without specific expression to that effect. Instead, the 1902 Act was left in the Code and in 1938 Congress amended it and added "these amendments shall apply only to tax sales held after the passage and approval of this Act, and said section 3 of the Act of February 28, 1898, as amended by the Act of July 1, 1902, *shall remain in full force and effect as to all tax sales held prior to the passage and approval of this Act.*" (52 Stat. 1202) (Italics supplied) Under the 1902 Act the Commissioners had no authority to convey property *for less than all* the assessments, taxes, costs, penalties, and charges due the District. The 1929 Act provided that no sale shall be made for less than all those costs, including advertising and sale, "unless by express order of the court." The compilers of the 1940 Code note that the two statutes provide alternative methods for sale of property which has been bid in at a tax sale of the District. (See Sections 47—1003 and 47—1011 to 47—1014.)

However this may be as to sales made for the full aggregate of accrued taxes, interest and other charges or more, the major purpose of the 1929 Act seems clear. Prior to that time there was no method or authority for selling property at a tax sale for less than the aggregate amount of taxes, interest and charges in arrears. The result was that the District, having taken in property for unpaid taxes, might find itself burdened with it so that it could neither sell it nor derive revenue from it. The 1929 Act created authority and a method for selling such property. That was by disposing of it for less than the amount of the accrued taxes, interest and other charges. The safeguard was imposed however that such a sale should be made only under order of court. The purpose of the 1929 Amendment therefore was not to repeal the 1902 provisions, making disposition of property by tax sale more cumbersome and expensive than previously; but was rather to provide for disposition upon terms not permissible prior to 1929, with the safeguard of judicial approval when the sale

should be made on the new terms. The sale involved in this case was for the full amount of the accrued taxes, interest and other charges, in fact for more, since the price included the 1934 taxes which were not then delinquent. The 1929 Act therefore had no application to this sale.

The foregoing analysis shows that there is no reasonable basis for plaintiff's argument that the 1929 Act had repealed the 1902 Act, under which the property was conveyed by the Commissioners to defendant. The sale to defendant was therefore valid.

The trial justice stated in his memorandum that "while tax deeds should not lightly be sustained in derogation of the title of record owners of property, it is nevertheless vital and imperative to the revenue of the Government that such deeds be not set aside and cancelled unless irregularities are made to appear which render them invalid." We find no such irregularities here.

Affirmed.