HARRISON DUNHAM vs. CITY OF LOWELL.

Middlesex.   November 17, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Tax,* Assessment, Abatement.

Where the legal title to land is held by a trustee under a will, a tax thereon should be assessed to such trustee.

One, who purchased and received a conveyance of land after May 1, and thereupon applied to those, who had assessed a tax to the owner of the land on May 1, to abate the tax, is not a person aggrieved by the assessment and cannot appeal to the Superior Court under R. L. c. 12, § 78, from a refusal of the assessors to grant the abatement.

As between the authority assessing a tax to the owner of land and the person to whom the tax is assessed, such person and not the land is primarily liable, the lien on the land being merely security of which the collector of the tax may avail himself in case of a default on the part of the person assessed.

COMPLAINT, filed in the Superior Court for the county of Middlesex under R. L. c. 12, § 78, against the refusal of the assessors of taxes of the city of Lowell to abate a tax assessed on May 1, 1907, upon certain real estate.

At the trial in the Superior Court before *Bond*, J., it appeared that one Brown, who was the plaintiff in *Brown* v. *Wright*, 194 Mass. 540, held the real estate in question on May 1, 1907, as trustee under a will, that, after the issuing of the rescript in that case, a single justice of this court on May 21, 1907, entered a decree directing a sale of the land, which sale was consummated on July 19, 1907, the complainant being the purchaser. Brown had not applied for any abatement of the tax. The complainant applied for such abatement on October 7, 1907, but the assessors refused to recognize his application.

The presiding judge dismissed the complaint; and the complainant alleged exceptions.

*H. Dunham, pro se.*

*J. G. Hill,* for the respondent, was not called upon.

HAMMOND, J.   1. The tax was properly assessed to Brown. He held the legal title as trustee, at least so far as respected the question of taxation. *Brown* v. *Wright,* 194 Mass. 540. It was therefore a valid lien upon the land.

2. The right to abatement is solely a creature of statute. R. L. c. 12, § 73, upon which the petitioner bases his right to apply for an abatement, provides that " a person aggrieved by the taxes assessed upon him " may make such application; and the question is whether within the meaning of the statute the petitioner is a person upon whom the tax was assessed. He was not the owner of the land on May 1, 1907, as of which time the tax was assessed, and the tax could not have been legally assessed to him. He contends, however, that it is primarily a charge upon the land, and that, inasmuch as he has since become the owner of the land, he is interested in the amount of the tax, which is excessive, and that in this way he is aggrieved by the assessment made as he says upon it; or, more briefly stated, the assessment for which the land may be held is an assessment upon him within the meaning of the statute.

The trouble with this contention is that, while in a certain sense and as between certain persons a tax may be regarded as primarily a charge upon the land, (*Swan* v. *Emerson*, 129 Mass. 289, 291,) yet it is not so as between the assessor or collector and the person assessed. As between them the tax is primarily a pecuniary imposition upon the latter, and the lien on the land is to be regarded simply as security of which the collector may avail himself in case of the default of the person assessed. Indeed there never is any lien upon real estate for taxes unless given by statute, (see the cases cited in Cooley on Taxation, 3d ed., 865, note 6,) and our earlier tax acts contained no provision for such a lien except possibly in the case of non-residents. See as examples St. 1780, c. 43; St. 1781, c. 16. A provision for such a lien as to real estate in Boston, however, appears in the tax act approved February 23, 1822, being St. 1821, c. 107, as found in 2 General Laws of Massachusetts, 577. It is stated in the note by the commissioners to this statute that this feature never had appeared before in a tax act. In the tax act of 1824 (St. 1823, c. 133) the principle was extended for the first time to all taxes on real estate throughout the Commonwealth, and ever since it has been one of the features of our tax system. *Hayden* v. *Foster*, 13 Pick. 492. St. 1830, c. 151, § 9. At first there does not seem to have been any limit of time expressly given to the existence of the lien, but by Rev. Sts. c. 8, § 18, the

time with certain exceptions was reduced to two years.  See *Hayden* v. *Foster*, *ubi supra*, for an instructive discussion upon this subject.

The tax, as we have said, was primarily upon the person assessed, and before the existence of the lien the only manner of collecting it was by demand, distress or arrest.  The very earliest directions for collecting the tax in case it was not paid on demand were as follows: " The officer shall distrain goods or cattle if they may be had, and if no goods, then lands and houses; if neither goods nor lands can be had within the town where such distress is to be taken, then to attach the body."  Anc. Chart. 71.

From a study of the history of our general method of taxation both as to remedies against the person assessed and as to the tax lien upon land, it clearly appears that as between the authority assessing the tax and the person assessed the latter is the person primarily liable, and that the assessment is made upon him as the landowner and not upon the land as such.  Within the fair interpretation of the statute the subsequent landowner does not become upon his purchase the person assessed.  The person assessed in this case was Mr. Brown and none other.  The petitioner has no standing for an abatement.  The case of *Hough* v. *North Adams*, 196 Mass. 290, upon which the petitioner somewhat relies, contains nothing inconsistent with this result.

*Exceptions overruled.*