CITY OF LOWELL *vs.* LOWELL BUILDING CORPORATION & others.

Middlesex.   March 5, April 1, 1941. — May 27, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Tax,* On real estate: assessment, street sprinkling assessment, abatement, foreclosure of right of redemption, tax deed.

The mere fact, that street sprinkling was done by a city during three summer months previous to the adoption by the city council and approval by the mayor under G. L. (Ter. Ed.) c. 40, §§ 16–18, of an order authorizing the work, determining its expense and the rate per linear foot of its assessment upon abutting owners, and directing such assessment and the inclusion thereof in the tax list and warrant for that year, did not render an assessment under the order invalid, such order being a ratification of the work previously done.

A landowner, who has failed to seek any abatement of an assessment for street sprinkling, is precluded from contending, in defence of a petition to foreclose his right of redemption after a sale for its collection, that the assessment was invalid because excessive.

The mere inclusion, in the columns for names in the valuation book of assessors of taxes and in the collector's commitment book, of the name of a building trust as well as the names of the trustees thereof, did not render erroneous a ruling that the assessment was valid where it was warrantably found, on all the evidence, that the assessment was to the trustees within the provisions of G. L. c. 59, § 11.

The mere fact that the entry of an assessment on the street sprinkling list of a city was only in the name of a building trust and not in the names of the trustees thereof did not make the assessment invalid under G. L. (Ter. Ed.) c. 40, § 18, where it was warrantably found on all the evidence that the actual assessment was made in the same manner as a real estate tax assessed for the same year, which was assessed to the trustees as such.

Under G. L. c. 60, § 48, as amended by St. 1927, c. 126, § 1, the collector of taxes of a city was not required to return a tax deed to the city treasurer within thirty days after his purchase at the tax sale.

PETITION, filed in the Land Court on May 26, 1933.

The case was heard by *Fenton,* J.

*L. F. Davis,* for the respondents, submitted a brief.

*H. L. McLaughlin,* City Solicitor, for the petitioner.

DOLAN, J. This is a petition to foreclose all rights of redemption under a tax title acquired by the petitioner in 1930 for the nonpayment of taxes for the year 1929, including a street sprinkling tax, on land situated on the north side of Middlesex Street (numbered "325 [*sic*]-357") in the city of Lowell. The judge ruled that the tax title was valid, and continued the case for further hearing on the matter of redemption. The case comes before us on the exceptions of the respondent Lowell Building Corporation to the rulings and decision of the judge.

On May 10, 1916, the premises in question were conveyed by one Dooley to William H. Burgess and Howard W. Lang in trust, for the benefit of a trust that was being formed. On May 18, 1916, Burgess and Lang executed a declaration of trust which was duly recorded. The instrument provided that "The trustees shall be designated so far as practicable as the 'Lowell Building Trust' and so far as practicable shall conduct all business and execute all instruments in writing in the performance of their trust, thus: Lowell Building Trust By Trustees . . . [followed by a reference to the agreement and declaration of trust, its date and place of record] but not individually." On April 1, 1929, the trustees were Arthur H. Wellman, Clarence L. Tower and B. Devereaux Barker.

The present petition was filed on May 26, 1933. On November 15, 1933, a mortgage on the premises involved was foreclosed by sale to the respondent Lowell Building Corporation, hereinafter referred to as the respondent. On April 16, 1929, the city council of Lowell ordered that the superintendent of streets consider the sprinkling and oiling of streets and report to the council. Without the making of any report, sprinkling work was done for the city by a contractor during the months of June, July and August, 1929. A list of streets upon which sprinkling had been done, together with the linear frontage of the abutters

thereon, was prepared by the office of the superintendent of streets and that of the city engineer in collaboration.

On September 3, 1929, acting under the authority of G. L. c. 40, §§ 16, 17, 18, the city council adopted an order, which was approved by the mayor on September 9, 1929, authorizing the sprinkling or oiling of certain streets, including the street on which the premises in question were located. The order determined the expense of the work as $473.48 and the rate as seven cents per linear foot of frontage, and directed the assessors to assess the cost and expense of the sprinkling to the abutters as a tax, and to include the assessment in the tax list and warrant committed by them to the collector for the municipal year of 1929, in accordance with § 18, and that the assessment be included in the annual tax bill for that year. When the street sprinkling list was filed with the assessors, the premises were described as "Lowell Building Trust; Land: 323 [*sic*]–357 Middlesex Street . . . Rate per linear foot, 7¢; foot frontage 199; Assessment $13.93." In fact the actual frontage of the premises was 198.74 feet, and the assessment should have been $13.91. The assessors checked the list as to the actual owners and posted the amount due in the commitment list, which agreed with the valuation book. As of April 1, 1929, the assessors assessed the locus, the tax being $9,913.04 which they committed to the city treasurer and collector of taxes on September 11, 1929, including in the commitment an additional amount of $13.93 for the sprinkling assessment, making a total of $9,926.97. The tax was not paid, and on April 10, 1930, the city treasurer and collector of taxes (hereinafter referred to as the collector) made a demand by mail, postage prepaid, for payment thereof on the Lowell Building Trust, which demand was received. The real estate assessment appears in the valuation book, an assessors' record, the entries being as follows: "Lowell Building Trust Bill  150 Congress St — Clarence H. Tower, Boston, Mass.  Arthur H. Wellman & B. Devereaux Barker Trs." The premises were advertised for sale for nonpayment of the 1929 tax and street sprinkling assessment, the locus being described as "325 [*sic*]–

357 North side Middlesex Street as shown on Plan I 15 in office of City Engineer." This plan shows the same dimensions as does the record title, setting forth the frontage on Middlesex Street as 198.74 feet. The premises were sold for the taxes on August 21, 1930, at which time the collector purchased them for the city for $10,599.39. The basis of the purchase price was as follows: "1929 tax, $9913.04; street sprinkling assessment, $13.93; interest to August 19, 1930, $666.67; demand $0.25; advertising, $3.00; preparing advertisement, $0.50; preparing deed, $2.00; . . . recording fee . . . $2.10, making the tax title total, $10,601.49." The tax deed was recorded September 5, 1930, and was returned to the collector by the registry of deeds on January 6, 1931. The respondent concedes that the requirements of law as to demand, publication, posting, conduct of the sale and form of the tax deed have been met.

The respondent made seven requests for rulings which were as follows: "1. That the order of the city council adopted September 3, 1929, authorized street sprinkling to be done in the future. 2. That the street sprinkling done prior to the city council order of September 3, 1929, could not be the basis of the street sprinkling assessment. 3. That the street sprinkling assessment of $13.93 was improper. 4. That the street sprinkling assessment of $13.93 was improperly made. 5. That the tax lien of the petitioner is invalid because of the invalid street sprinkling assessment. 6. That the tax lien of the petitioner is invalid because of improper assessment. 7. That the tax lien of the petitioner is invalid because the deed was not properly delivered to the city treasurer after being recorded." These requests were denied by the judge because "either contrary to the facts found by . . . [him], unnecessary or inapplicable." In his decision the judge found that the assessment of the taxes was to the trustees and not to the "Lowell Building Trust"; that the real estate assessment for 1929 was valid; that the interest computed thereon was correct; that the fact that the tax deed was not returned from the registry of deeds to the collector or deposited with the treasurer within thirty

days after the purchase did not affect the validity of the title conveyed by the deed; that the street sprinkling assessment was not invalid by reason of the fact that the work was done before the order of September 3, 1929; that it was validly assessed to the trustees; and that the excess charge of two cents did not render it invalid. The only issues raised by the respondent's specifications that have been argued before us are (1) that the street sprinkling assessment was invalid, (2) that the real estate assessment was invalid, and (3) that the tax deed was not properly deposited with the city treasurer.

The first ground upon which the respondent bases its contention that the street sprinkling assessment was invalid is that the order of the city council under G. L. c. 40, §§ 16–18, authorizing the sprinkling of streets and assessment of the cost to abutters was not adopted until after the work had been done in 1929. But even if it be assumed that there was irregularity in the performance of the street sprinkling work prior to the adoption of the order of September 3 by the city council, we are of opinion that the language of the order taken in connection with the list of streets appended thereto, together with a determination of the expense of the work as $473.48 and the assessment rate as seven cents per linear foot of frontage, may properly be held to have been a ratification of the work previously done, and a subsequent ratification is the equivalent of original authority. *Emerson* v. *Newbury*, 13 Pick. 377, 379. *Crawshaw* v. *Roxbury*, 7 Gray, 374, 377. *May* v. *Gloucester*, 174 Mass. 583, 585. After the adoption of the order by the city council and before assessing the tax the assessors had in their office the details for the assessment and assessed the tax accordingly. We think that the irregularity under discussion was not sufficient to render the assessment invalid. See *Sears* v. *Aldermen of Boston*, 173 Mass. 71, 80; *Corcoran* v. *Aldermen of Cambridge*, 199 Mass. 5, 14.

The second ground put forward by the respondent in support of its contention that the street sprinkling assessment was invalid is that the amount of the tax was incor-

rect in that it was excessive to the extent of two cents. G. L. (Ter. Ed.) c. 40, § 18, relating to the assessment of street sprinkling taxes, provides that "in cities the assessors shall make no abatement thereof except upon the recommendation of the board or officer by whom the list was certified to them." It is established that under this provision, as in cases of taxes upon property, the landowner has a right to petition for an abatement; that he has a right to apply to the board or officer certifying the list for a recommendation to the assessors for abatement; and that the board or officer has the official duty of hearing him and passing upon the merits of his claim, and of recommending an abatement if it appears that the tax or any part of it was improperly assessed. *Corcoran* v. *Aldermen of Cambridge*, 199 Mass. 5, 11. See also *Stark* v. *Boston*, 180 Mass. 293. This was the exclusive remedy of the trustees of the Lowell Building Trust if aggrieved by the overcharge and the respondent is bound by their failure to seek its abatement. *Boston Water Power Co.* v. *Boston*, 9 Met. 199. *Kelley* v. *Barton*, 174 Mass. 396. *Sears* v. *Nahant*, 221 Mass. 435, 436. *Whitney* v. *Tax Commissioner*, 234 Mass. 188, 191. *Maley* v. *Fairhaven*, 280 Mass. 54, 57, 58. See also *Dunham* v. *Lowell*, 200 Mass. 468, and cases cited in 9 Am. L. R. 662, *et seq.*

The third ground of attack by the respondent is that the street sprinkling tax was assessed improperly to the "Lowell Building Trust" instead of to the trustees. Since the same contention is made with reference to the real estate tax, we deal with these contentions together.

Volume H to L of the valuation books, an assessment record, of the city was introduced in evidence. The book contains, among others, two columns, "one headed 'names' under which the names of the persons assessed are entered, and the other headed 'residences' under which are entered the addresses of the persons assessed. The . . . collector's commitment book is a copy of the valuation book." The real estate assessment appears on page 87 of the valuation book (volume H to L), the entries being as follows:

| Names | Residences |
|---|---|
| "Lowell Building Trust | Bill   150 Congress St — |
| Clarence H. Tower, | Boston, Mass. |
| Arthur H. Wellman & B. Devereaux Barker Trs." | |

There was evidence that the word "bill" as thus appearing meant "send bill to." The coupon of the 1929 real estate tax bill read "Lowell Bld'g Trust," but the chief clerk of the assessors' office testified that it did not follow "that the bill was made out the same way." The entry of the street sprinkling assessment, so far as material to the question now under consideration, reads: "Name — Lowell Building Trust. Residence — 150 Congress St., Boston, Mass. . . ." In the affidavit of the collector as to his proceedings prior to the tax sale, he certified that he served demand upon the "Lowell Building Trust." With reference to the real estate tax the judge ruled that the assessment must be made to the trustees, and found that "A careful perusal of the entries in question giving due consideration to the words as written, the punctuation, the spacing, together with their position in the columns in the valuation book . . . leads . . . to the inescapable conclusion that the assessment was to the trustees . . . within the provisions of" G. L. c. 59, § 11, which provided, so far as material, that the assessment should "be assessed . . . to the person who is . . . the owner . . . thereof on April first." (See now G. L. [Ter. Ed.] c. 59, § 11, as amended by St. 1933, c. 254, § 29; St. 1936, c. 92; St. 1939, c. 175.) The judge ruled that the assessment of the real estate tax was valid.

Under G. L. c. 59, § 44, in force in 1929, it was provided that, "The list shall exhibit the valuation and assessment of the polls and estates of the inhabitants assessed; and the valuation and assessment of the estates of non-resident owners, and shall contain the names of the non-resident owners of the property assessed, or such description of them as can be given, their places of abode, if known, the description of their estate, the true value of such estate, and the tax thereon." Manifestly in the instant case the names of the true owners and their description as trustees were set

forth in the list. There is nothing in the record to show that their places of abode, which were not in the city of Lowell, were known to the assessors. We think that there was a sufficient compliance with the statute, and that the inclusion in the description of the name by which it was provided in the declaration of trust that the trustees should do business did not operate to make the trust itself the entity to which the tax was assessed, but that, like the addition of the address "150 Congress St — Boston, Mass.," it was no more than surplusage, which, upon the facts disclosed by the record, could not as matter of law affect the validity of the assessment as one made to the trustees. *Welles* v. *Battelle*, 11 Mass. 477, 482. The facts that the demand was certified to have been made upon the Lowell Building Trust, and that, as evidenced by certain exhibits, other methods of description of owners of other properties were employed, were but fragments of the evidence and not controlling in the face of the evidence as to the exact form in which the assessment of the real estate involved was actually made. There was no error of law in the judge's ruling that this assessment was a valid one.

With respect to the respondent's contention that the street sprinkling assessment was made to the Lowell Building Trust and so was not valid, the judge found that "while the entry on the street sprinkling list for the year 1929 shows only the name of the Lowell Building Trust and not the name of the trustees . . . the actual assessment was made in the same manner as the real estate tax for 1929" and ruled that it was properly assessed. There was no error of law in this ruling. Under G. L. c. 40, § 18, it was provided that the assessment for street sprinkling "shall be a lien upon the estate, and shall be levied, collected, reassessed . . . and shall be a part of, the tax for that year on such estate." We have already pointed out that the evidence discloses that the list filed with the assessors containing the names of the abutters to whom the sprinkling tax was to be assessed was checked by the assessors as to the "actual owners" and that the amount due was posted in the commitment list which agreed with the valuation list, in which

the locus itself was assessed to the trustees in the form that we have heretofore set out; and that the assessors committed the tax on the locus including in the commitment the additional amount of the sprinkling assessment. We· are of opinion that, as provided in § 18, the sprinkling assessment became a part of the tax on the estate involved, was included properly in the commitment of the assessment of the real estate tax to the collector, and was in effect incorporated in that assessment which was validly made to the trustees, as ruled by the trial judge.

The remaining contention of the respondent is that the provisions of G. L. c. 60, § 48 as amended by St. 1927, c. 126, § 1 (then in force), were not complied with since the tax deed was not returned to the treasurer within thirty days after the purchase at the tax sale by the petitioner. The evidence discloses that the tax title was purchased by the collector for the city on August 21, 1930. The deed, dated August 30, 1930, was recorded at the proper registry of deeds on September 5, 1930, and was returned by the registry to the collector on January 6, 1931. Under § 48, as amended, the duty of recording the deed "within thirty days after · the purchase"[1] was on the collector. *Quincy* v. *Wilson*, 305 Mass. 229, 231. The collector complied with that requirement of the statute. The provisions of § 48 as amended, that the amount of the tax for which he purchases for the city, and the charges and expenses of the levy and sale, and the cost of recording the deed of purchase "shall be allowed him in his settlement with such . . . [city], provided he has caused the deed to be duly recorded within thirty days after the purchase and to be delivered to the . . . [city] treasurer," in our opinion prescribe not the time for the delivery of the deed to the treasurer, but only the time within which the deed shall be recorded. The ruling of the judge to that effect was right.

What we have said disposes of all of the exceptions argued by the respondent. The entry will be

*Exceptions overruled.*

---

[1] Now sixty days by St. 1933, c. 325, § 5.