ASSESSORS OF BOSTON *vs.* J. HENRY NEAL & others,
trustees.

Suffolk.   March 3, 1941. — March 30, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Tax,* On real estate: abatement. *Signature. Words,* "Signed," "Sign,"
"In writing."

There was no error of law in an implied finding by the Appellate Tax
Board that, after an assessment of a tax on certain real estate to
three named persons as trustees of a named trust, the same persons
made an application for abatement, where it appeared that the appli-
cation was on a form approved by the commissioner of corporations
and taxation, referred to that real estate and that tax, described the
applicants and the owners of record as ". . . [name of one of such
persons] et al, Trustees of . . . [name of the trust]," and was signed
merely "Trustees of . . . [name of the trust]."

An application in 1936 by the trustees of a certain trust for an abate-
ment of a real estate tax was not defective in the circumstances in
that, at the place for signature "under the penalties of perjury" on
the approved form, there appeared merely the typewritten words
"Trustees of . . . [name of the trust]," without any signature in
handwriting, if such words were placed there by the authority of the
trustees.

APPEAL from a decision by the Appellate Tax Board.

*E. K. Nash,* Assistant Corporation Counsel, (*N. Moger,*
Assistant Corporation Counsel, with him,) for the assessors
of Boston.

*W. H. Hitchcock,* for the taxpayers.

FIELD, C.J.   This is an appeal by the assessors of Bos-
ton from a decision of the Appellate Tax Board granting a
partial abatement of the tax for the year 1936, assessed to
J. Henry Neal and others upon certain real estate in said
city.   G. L. (Ter. Ed.) c. 58A, § 13, as amended.   No evi-
dence is reported, but copies of the tax bill and the applica-
tion to the assessors for abatement are included in the
record as provided by said § 13.

The assessors contend that the Appellate Tax Board had no jurisdiction to grant the abatement for the reason that there was no application to the assessors for abatement that complied with the provisions of G. L. (Ter. Ed.) c. 59, § 59, as appearing in St. 1933, c. 266, § 1, and amended by St. 1935, c. 187, § 1. See now St. 1939, c. 250, § 1.

General Laws (Ter. Ed.) c. 59, § 59, as amended, so far as here material, provides that a "person aggrieved by the tax assessed upon him may . . . apply in writing to the assessors, on a form approved by the commissioner [of corporations and taxation], for an abatement thereof." "The only remedy available to a taxpayer to secure a reduction of his annual property tax on the ground that the assessment is excessive is by proceedings for an abatement under G. L. (Ter. Ed.) c. 59, § 59 . . . An essential step in that procedure is the filing of an application with the assessors. The failure to file such an application bars relief. And an application that does not comply with the requirements of the statute is ineffectual." *Choate* v. *Assessors of Boston,* 304 Mass. 298, 301–302. *Assessors of Boston* v. *Suffolk Law School,* 295 Mass. 489, 496–499. *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300, 303, 308.

The tax in question was assessed to "J. Henry Neal, Edmund C. Campbell and William H. Hitchcock, Trs. First Peoples Trust." It is not questioned that the tax was assessed to the proper persons or that it was assessed to the individuals named. See *Lowell* v. *Lowell Building Corp.* 309 Mass. 165, 170–172. Though real estate is held in trust, it is to be assessed to the persons having legal title thereto, as the owners thereof. G. L. (Ter. Ed.) c. 59, § 11, as appearing in St. 1936, c. 92. See now St. 1939, c. 175. *Miner* v. *Pingree,* 110 Mass. 47. *Dunham* v. *Lowell,* 200 Mass. 468. Since, however, trustees are joint owners, it is the entire tax that is to be assessed to them, and such tax may be assessed "in the name of one or more of the record owners." G. L. (Ter. Ed.) c. 60, § 56. *Curtiss* v. *Sheffield,* 213 Mass. 239, 245. Moreover, with exceptions not here material, it is the persons assessed as owners who must

apply for abatement. G. L. (Ter. Ed.) c. 59, § 59, as amended. See *Dunham* v. *Lowell,* 200 Mass. 468, 469; *Choate* v. *Assessors of Boston,* 304 Mass. 298, 302.

The Appellate Tax Board, with respect to the application for abatement, found as follows: "An application for abatement was filed September 21, 1936 . . . It was on a form approved by the commissioner of corporations and taxation. At the bottom of the form were two lines with the word 'signature' printed to the left of them. On these lines there was typewritten the words:

'Trustees of the First People's Trust

<br>

Treasurer'

Through inadvertence no name was written above or beside the word 'Treasurer.' When the application was filed with the assessors it was accompanied by a letter stating that the application was enclosed. This letter was signed 'First People's Trust, W. C. Larsen, Treasurer.'" The Appellate Tax Board decided that an application was filed and that "the application in question was in writing on a form approved by the commissioner," as required by G. L. (Ter. Ed.) c. 59, § 59, as amended. The question for determination is whether, on the facts disclosed by the record, this decision was erroneous as matter of law. G. L. (Ter. Ed.) c. 58A, § 13, as amended.

It is apparent from the finding of the Appellate Tax Board and the copy of the application for abatement that this application was "in writing . . . on a form approved by the commissioner" in the narrow sense that the writing was on such a form. See *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300, 307. Properly it is not questioned that the application was "in writing" so far as the body thereof is concerned, though the application is on a printed form and the answers thereon to the printed questions are typewritten. General Laws (Ter. Ed.) c. 4, § 7, Thirty-eighth, provides that in construing statutes "'Written' and

'in writing' shall include printing, engraving, lithographing and any other mode of representing words and letters," with a special provision relating to a "written signature."

The assessors, however, argue, in support of their basic contention: (a) that the application in question was not the application of the persons entitled to apply for abatement — the individuals to whom the real estate was assessed — and (b) that the application was not properly signed.

1. The implied finding of the Appellate Tax Board, that the application for abatement was the application of the individuals assessed and entitled to apply for abatement, was not, on this record, erroneous as matter of law. In the record of the Appellate Tax Board the case is entitled "J. Henry Neal & others, trustees, *vs.* Board of Assessors of the City of Boston," and the Appellate Tax Board in its "Findings of Fact and Report" recites that the "appellants [meaning appellants from the failure of the assessors to act upon the application within four months after it was filed — an implied denial thereof — see G. L. (Ter. Ed.) c. 58A, § 6, as amended] are trustees of the First People's Trust," and that "the appellant trustees were the owners" of the real estate in question. The tax bill, after naming J. Henry Neal, Edmund C. Campbell and William H. Hitchcock, describes them as "Trs. [obviously an abbreviation of "Trustees"] First Peoples Trust." The application for abatement recites, "Respectfully represents J. Henry Neal et al, Trustees of the First People's Trust," and describes the "owner of record" as of the assessment date as "J. Henry Neal et al, Trustees of the First People's Trust." Opposite the word "signature" at the end of the form approved by the commissioner is typewritten "Trustees of the First People's Trust . . . Treasurer," obviously referring to "J. Henry Neal et al, Trustees of the First People's Trust," previously named in the application. The references in the application to the real estate, the assessors' book, the assessed valuation, and the tax clearly warranted the conclusion that the application related to the same real estate and the same tax as are referred to in the tax bill. And

nothing in the record precluded the Appellate Tax Board from concluding that the application in question filed with the assessors, accompanied by a letter signed "First People's Trust, W. C. Larsen, Treasurer," was filed in behalf of the persons purporting by such application to be seeking abatement.

The nature of an application for abatement was pointed out in *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300. It was there said that the application is "a 'notice' by which 'information' is given to the assessors 'in reference to a possible pecuniary liability' . . . a 'request' or 'claim' for reduction of the tax assessed by them and, as incidental thereto, for an opportunity to be heard by them as to the propriety of the original assessment and, if denied, a foundation for later proceedings before an appellate board" (page 312), and that "the information to be included in an application for abatement of a tax on real estate, at the risk that if not so included the application cannot be considered, is such information as will adequately inform the assessors that a claim for abatement of a tax upon real estate therein referred to is being made by a person entitled to apply for such abatement, with a 'sufficient description of the particular real estate as to which an abatement is requested.'" Page 313. No question, however, is here raised as to the sufficiency of the description of the particular real estate.

Notwithstanding the fact that the application described the applicants for abatement as "J. Henry Neal et al, Trustees of the First People's Trust," without expressly naming the other individual trustees, we think it could have been found by the Appellate Tax Board that the description in the application of the persons seeking abatement, considered in connection with other statements in the application, was such as "adequately [to] inform the assessors that a claim for abatement of a tax upon real estate therein referred to" was being made by all three of the trustees as the individuals to whom the tax had been assessed and who were the persons "entitled to apply for such abatement." It is not to be assumed that the assessors

with whom the application was filed were ignorant as to the persons to whom they had assessed the tax referred to in detail in the application even to the extent of referring to the assessors' book by line and page. The persons assessed and those seeking abatement are described as trustees of the First People's Trust, and the tax in question obviously is the same tax. The result here reached is not fairly open to the objection that extrinsic evidence was required to identify the persons seeking abatement. Compare *Merrill* v. *Paige*, 229 Mass. 511, 514; *Roland* v. *Kilroy*, 282 Mass. 87, 89, 90–91; *DePrizio* v. *F. W. Woolworth Co.* 291 Mass. 143, 149. Extrinsic evidence was not required to inform assessors of their own action to which reference is made in the application. They were presumed to be familiar with such action. Manifestly the application was intended to serve as a foundation for abatement by the assessors or for further proceedings before an appellate board with respect to the tax assessed to these individuals, who were, as described in the tax bill, the trustees of the First People's Trust. Since the principles governing assessment and application for abatement are not the same in all respects, it is unnecessary to consider whether an assessment of the real estate in question to "J. Henry Neal et al, Trustees of the First People's Trust," would have been a valid assessment of the real estate to the individual trustees. See, however, G. L. (Ter. Ed.) c. 60, § 21; *Alvord* v. *Collin*, 20 Pick. 418, 426; *Sargent* v. *Bean*, 7 Gray, 125, 127–128; *Westhampton* v. *Searle*, 127 Mass. 502, 505.

2. The assessors, however, object to the application on the ground that it was not properly "signed." The substance of this objection is twofold: (a) that the application was not "signed" in the handwriting of anybody, and (b) that it was not "signed" in the name of the individual trustees who were the persons assessed. Opposite the printed word "signature" at the end of the form of application approved by the commissioner was typewritten "Trustees of the First People's Trust . . . Treasurer," but no name was inserted before the word "Treasurer" in handwriting or otherwise. There was no "signature" in

the handwriting of any person actually on the form approved by the commissioner.

We cannot say upon this record that the typewritten words were not placed upon the form by authority of the individual trustees with the intention of authenticating the application as their act for the purpose of securing an abatement of the tax assessed to them.  And as already pointed out, the Appellate Tax Board could have found that the application was sufficient "adequately [to] inform the assessors" that a claim for abatement was being made by the individual trustees.  The objection now under consideration, therefore, is solely to the form of signature.

In dealing with this objection it is necessary to consider the requirement of G. L. (Ter. Ed.) c. 59, § 59, as amended, with respect to an application being "signed."  This statute does not, in terms, require that an application be "signed," differing in this respect from some somewhat similar statutes.  For example, the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, requires a memorandum "in writing and signed by the party to be charged . . . or by some person thereunto by him lawfully authorized" (see also G. L. [Ter. Ed.] c. 106, § 6), and the statute relating to injuries from a "defect or want of repair" in a public way, G. L. (Ter. Ed.) c. 84, §§ 18, 19, as substituted by St. 1933, c. 114, §§ 1, 2, requires a notice "in writing, signed by the person injured or by some one in his behalf."  In the absence of such an express provision requiring that an application be "signed," a requirement of this nature must be found by implication from the nature of an application and the requirement that the application be "in writing," or in the fact that the application is required to be "on a form approved by the commissioner" coupled with the fact that the form so approved provides a place for a "signature."

Doubtless a "signature" by or in behalf of an applicant for abatement would be a natural incident of such an application, but apparently the Legislature did not regard a "signature" in any particular form — if at all — as essential to an application if, without a "signature," an application received from a proper source was sufficient "ade-

quately [to] inform" the assessors "in writing" as to the identity of the person applying for abatement. The change in the requirement as to an application effected by St. 1933, c. 266, § 1, now embodied in G. L. (Ter. Ed.) c. 59, § 59, as amended — apart, at least, from the effect of St. 1931, c. 150, § 2, and St. 1933, c. 165, § 2 — was from an oral application (see *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300, 301, and cases cited) — which, of course, required no "signature" — to an application "in writing" on an approved form. It is to be assumed that in making this change the Legislature used the words "in writing" in the sense in which they had long been defined by statute for the purpose of the construction of statutes (G. L. [Ter. Ed.] c. 4, § 7, Thirty-eighth), as including "printing, engraving, lithographing and any other mode of representing words and letters." Even if it is to be inferred that an application must be "signed," though the statute contains no such express requirement, the further inference is not to be drawn that the application must be "signed" other than "in writing" as these words are defined by statute.

Under the statute of frauds, whereby it is expressly provided that a memorandum be "signed," it is generally the law that the statute is complied with by signing the memorandum "in writing" substantially as these words are defined by G. L. (Ter. Ed.) c. 4, § 7, Thirty-eighth, with the declared or apparent intent of authenticating the signature as that of the signer, though the point has not been directly decided in this Commonwealth. Am. Law Inst. Restatement: Contracts, § 210. 2 Williston, Contracts (Rev. ed.) § 585. See *Hawkins* v. *Chace*, 19 Pick. 502, 504–505; *Boardman* v. *Spooner*, 13 Allen, 353, 357–358. Moreover, in *Finnegan* v. *Lucy*, 157 Mass. 439, where a statute was involved providing, among other things, that a husband or wife under some circumstances "may give notice in writing, signed by him or her," to a person requesting him not to sell intoxicating liquor to the wife or husband of the person making the request, the court held that a "signature in the proper handwriting" of the person giving the notice was

not required, notwithstanding the provision in Pub. Sts. c. 3, § 3, Twenty-fifth, unchanged in substance in G. L. (Ter. Ed.) c. 4, § 7, Thirty-eighth,[1] that "when the written signature of a person is required by law, it shall always be the proper hand-writing of such person, or, in case he is unable to write, his proper mark." The court said: "There are many instances where, by express provisions of statute, or by rules of law, a person is required to make a demand or give a notice, and whereby express requirement or by implication his name is to be signed. . . . Ordinarily, and in the absence of anything to show the contrary, it can hardly be supposed that the Legislature meant to require in all such cases a signature in the proper handwriting of the person. . . . In the case before us, the statute did not in terms require the plaintiff's 'written signature,' but only that the notice should be 'signed.' Signing does not necessarily mean a written signature, as distinguished from a signature by mark, by print, by stamp, or by the hand of another." Page 443. If, under statutes requiring that an instrument be "signed," a signature in handwriting is not required, a statute, like that now under consideration, containing no such express requirement and providing merely that the instrument be "in writing" cannot rightly be construed as requiring that the instrument be signed in handwriting.

We need not consider whether the commissioner, under his authority to approve a form of application, could require that an application be signed in handwriting when the statutory requirement is merely that the application be "in writing" on such an approved form, for the form approved makes no such requirement. The form cannot be interpreted as going farther than to provide that the application be signed in a manner that conforms to the law respecting signing of such instruments, and to indicate the place on the application where it shall be signed in that manner. (Whether signing at that place on the approved

---

[1] This clause now reads: " 'Written' and 'in writing' shall include printing, engraving, lithographing and any other mode of representing words and letters; but if the written signature of a person is required by law, it shall always be in his own handwriting or, if he is unable to write, his mark."

form is essential to an effective application need not be considered on the facts of this case.)   And the statement on the· form, "Signed this . . . day of . . . 1936   Under the Penalties of Perjury," which is to be filled out by the person signing the application, does not import that the application must be signed in handwriting.   The effect of such a statement is to subject to liability to the penalties of perjury a person who "signs and issues" a "written statement required by law" within the meaning of G. L. (Ter. Ed.) c. 268, § 1A, set out in a footnote.[1]   It is unnecessary to decide whether an application for abatement constitutes such a "written statement" within the meaning of the statute, or whether, on the other hand, the statute applies only to statements that, by other provisions of law, must be made on oath or affirmation, for which requirement this statute and related statutes provide a substitute.   See G. L. (Ter. Ed.) c. 4, § 6, Sixth.   An application for abatement, unlike numerous other documents required by statutes for the purpose of taxation (see, with various amendments, G. L. [Ter. Ed.] c. 59, §§ 29, 30, 31; c. 62, §§ 22, 23, 24; c. 63, §§ 3, 13, 17, 25, 35, 36, 53, 67; c. 64A, § 4; and see *Central National Bank* v. *Lynn*, 259 Mass. 1, 3–4), is not by statute required to be made on oath or affirmation. Presumably the omission of such a requirement in the statute relating to applications for abatement was due to the nature of such an application, as pointed out in *Assessors of Brookline* v. *Prudential Ins. Co.* 310 Mass. 300, 312, as "a 'notice' by which 'information' is given to the assessors 'in reference to a possible pecuniary liability' . . . a 'request' or 'claim' for reduction of the tax assessed by them," and not "the presentation of evidence in support of such claim."

In view, however, of the definition of "written" in G. L. (Ter. Ed.) c. 4, § 7, Thirty-eighth, it is obvious that such

---

[1] "Except in a judicial proceeding or in a proceeding in a course of justice, no written statement required by law shall be required to be verified by oath or affirmation before a magistrate if it contains or is verified by a written declaration that it is made under the penalties of perjury.   Whoever signs and issues such a written statement containing or verified by such a written declaration shall be guilty of perjury and subject to the penalties thereof if such statement is wilfully false in a material matter."

a "written statement" need not be in handwriting. And so far as the form of signing is concerned, signing in any manner that conforms to other requirements of law, even though not in handwriting, would bring the person so signing within the scope of the statute. No reason appears for giving to the word "signs" in G. L. (Ter. Ed.) c. 268, § 1A, a narrower definition than is ordinarily given, as already pointed out, to the word "signed." A person who "signs" a "written statement," within the scope of the statute, other than in handwriting, should not for that reason be free of liability for a statement so "signed" that is "wilfully false in a material matter." General Laws (Ter. Ed.) c. 268, § 1A, therefore, furnishes no basis for an inference that an application for abatement, even if within the statute, must be signed in handwriting.

Since an application for abatement can be made not only directly by a person entitled to apply for abatement but also by an agent in his behalf (see *Choate* v. *Assessors of Boston*, 304 Mass. 298), it is apparent that the application need not be signed in the handwriting of the applicant. And no greater reason appears for requiring an agent of the applicant to sign in his own handwriting. We conclude, therefore, that the application in question was not ineffective because not signed in handwriting.

The other objection of the assessors, on this branch of the case, to the application for abatement is based on the fact that such application was not signed in the names of the individual trustees who were assessed, but instead the words "Trustees of the First People's Trust" were used. It could have been found that these words described the individual trustees who were the persons actually assessed for the tax, partial abatement of which was sought by this application, and nothing in the record precluded a finding that these words were adopted by them as their signature for the purpose of the application. There is nothing in the record to indicate that the assessors were deceived, or likely to be deceived, by the form of signature to the application, or that, as already stated, the assessors were not adequately informed as to the persons seeking abatement.

In these circumstances it cannot be ruled as matter of law that the signature of the individual trustees in descriptive words by which such individuals could readily have been identified, rather than in their own names, rendered the application ineffective.    Compare *Sanborn* v. *Flagler*, 9 Allen, 474, 477–478;  *McGovern* v. *Hern*, 153 Mass. 308, 310;  *Tobin* v. *Larkin*, 183 Mass. 389, 391;  *Merrill* v. *Paige*, 229 Mass. 511, 514;  *Lowell* v. *Lowell Building Corp.* 309 Mass. 165, 172–173;  2 Williston, Contracts (Rev. ed.) §§ 578, 585.

The conclusion of the Appellate Tax Board that it had jurisdiction of the application cannot be said upon this record to be erroneous as matter of law.    Consequently, since no other question of law is presented by the appeal, there must be an abatement in the amount determined by the Appellate Tax Board, $2,850, with costs.

*So ordered.*