41 N.J. Super. 231 (1956)
124 A.2d 593
J.D. LOIZEAUX LUMBER COMPANY, A CORPORATION, PLAINTIFF-APPELLANT,
v.
HELEN DAVIS AND MICHAEL DAVIS, HUSBAND AND WIFE; MICHAEL SCHACK AND ELIZABETH SCHACK, HUSBAND AND WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued July 9, 1956.
Decided August 3, 1956.
*233 Before Judges FRANCIS, HUGHES and KNIGHT.
Mr. Cuddie E. Davidson, Jr., argued the cause for the appellant (Messrs. Davidson and Davidson, attorneys; Mr. Robert J.T. Mooney, on the brief).
*234 Mr. Morris Spritzer argued the cause for the respondents.
The opinion of the court was delivered by FRANCIS, J.A.D.
The problem presented here is whether a materialman's notice of intention was signed as required by the Mechanics Lien Act, N.J.S. 2A:44-72, and if not, whether the plaintiff should have been permitted to amend it under N.J.S. 2A:44-73.
Defendants Helen Davis and Michael Davis, husband and wife, and Michael Schack and Elizabeth Schack, husband and wife, are owners of certain premises at 25 Whitehead Avenue, South River, N.J. Some time before February 1, 1954 they entered into a contract with one Waldemar Hanselmann for the performance of certain construction work thereon. The contract was not filed as authorized by N.J.S. 2A:44-75, and as the result the premises remained subject to a lien in favor of materialmen who complied with N.J.S. 2A:44-71 and 72.
Under section 71 a materialman who expects to supply materials to the contractor, makes himself eligible for a lien if he files in the office of the proper county clerk a notice of intention to do so prior to the furnishing thereof. The notice is required by section 72 to be "signed by or on behalf of the person for whose benefit it is filed" and contain:
"a. The name of each person who, within 10 days prior to the filing, shall have been the owner of record of the estate in the land to which the lien is to attach;
b. A description of the land sufficient to identify it;
c. The name of the one for whom the labor is to be performed or to whom the materials are to be furnished; and
d. The full name and address of the one for whose benefit the notice is filed, and the name of anyone whose signature, when affixed to any instrument relating to such right of lien, shall be binding on the one for whose benefit the notice is filed." (Emphasis added.)
Prior to February 1, 1954 Hugh B. Sweeney, credit manager of the plaintiff J.D. Loizeaux Lumber Company, talked with the attorney for the owners about the financial capacity of the contractor in connection with the impending sale to him of certain materials. The attorney explained the amount *235 involved in the general contract, and in the course of the conversation plaintiff's agent said he would file a notice of intention. On February 1, before delivery of any materials, such a notice was filed.
Since the controversy centers around the notice, it seems advisable to set it forth in full:
"To the County Clerk of Middlesex County:
In compliance with the requirements of Title 2, Chapter 60, Article 10 of the Revised Statutes of 1937, and the supplements thereto and amendments thereof, this notice of an intention to perform labor or furnish materials or both is hereby submitted to you for filing and recording as required by the provisions of said act.
 NOTICE IS GIVEN as of 2/1/1954
(a) That Helen Davis & Michael Davis her husb & Michael Schack & Elizabeth Schack hs. wf.
is the name of one who, within ten days prior to the filing of this notice, is or has been the owner of record of an estate in the lands hereinafter referred to, to which the lien under the aforesaid act may attach;
(b) That the lands to which any lien protected by this notice can or may attach are identified by the following description thereof, viz  lying and being in
Boro of South River, Middlesex County, N.J.
Located at the northeast corner of Whitehead Ave and Augusta St. More fully described in deed book 1718 pgs 22 & 25 &c
(c) That any labor and/or materials to be performed or furnished in connection with any building operation upon the above described lands under the protection of this notice will be upon the order of and at the expense of

Waldemere Hanselmann
(d) That Fred D. Loizeaux or A.A. VanderVeer or Hugh B. Sweeny is the name of the person or persons whose signature shall be binding on the one for whose benefit this notice is filed when affixed to any instrument relating to any right of lien existing by virtue of the filing of this notice; and the full name and address of the one for whose benefit this notice is filed is as follows:
 Name J.D. Loizeaux Lumber Company
 By: Attorney-in-Fact
 Address 861 South Avenue
 Plainfield N.J.
 City State"
The italicized words were typed; the remainder was a printed form.
It is not disputed that thereafter lumber and other materials to the extent of $9,906.75 were furnished to Hanselmann *236 by plaintiff and used in the construction work. Payment not having been made, on July 26, 1954 plaintiff filed a lien claim in that amount. Among other things it recites the names of the mortgagees, and Hanselmann and William R. Coyle who, as prospective lien claimants, had recorded notices of intention subsequent to that of plaintiff. On the same day suit was brought thereon against the owners, mortgagees, Hanselmann and Coyle. Judgment was sought generally against Hanselmann for $9,906.75, specially against the land of the owners for that amount, and as to all defendants except the owners the complaint asked a declaration of the priority of plaintiff's lien over their notices of intention.
The mortgagees and Coyle failed to appear or answer the complaint or to charge in any way that plaintiff's lien was defective. Hanselmann admitted the purchase and use of plaintiff's goods but cross-claimed against the owners, alleging breach of contract by them. He sought $7,375 damages thereon. The owners apparently then counterclaimed against him. Over the objection of Hanselmann these actions between the contractor and owners were severed at the trial because of the illness of one of the owners, who was said to be an important witness on the cross-claim and counterclaim.
The answer of the owners asserted, among other things, that the plaintiff's notice of intention was invalid because it was not signed. Some time later the Lumber Company, without conceding the lack of signature, moved to amend so that it would appear to be signed by one of its officers. In doing so, reliance was placed upon N.J.S. 2A:44-73, which provides as follows:
"At any time before judgment on a lien claim the superior court or the court before whom the action on such lien claim is pending, on application of the lien claimant and on reasonable written notice to all parties interested, may order any mechanic's notice of intention filed pursuant to section 2A:44-71 of this title, to be amended, in matter of substance as well as form, whenever it shall appear to said court that such amendment can be justly made; * * *." (Emphasis added.)
*237 A county judge other than the one who tried the case heard the motion and denied it by letter, saying that in his opinion the "statute does not permit this court to amend the materialman's notice of intention heretofore filed * * *." No order was ever entered to formalize the denial. When the application to amend was renewed at the trial, the court noted the previous disposition and remarked: "It might very well be that under the circumstances his action would be binding upon me." However, he decided the matter independently, saying: "But I do not premise my decision upon that." Since the defendants entered no order on the earlier motion, we shall consider the latter and final determination as the basis for our review.
This brings us to a discussion of the two major issues argued by the parties.
No express finding was made below as to whether or not the notice was signed within the meaning of the statute. Although the plaintiff appears to have taken the position (particularly on the application to amend) that the signing was adequate, in the course of delivering his oral opinion at the close of the proof, the trial court said:
"In this case the notice of intention admittedly was not signed by the materialman."
Actually we find nothing in the record to establish an admission of that legal consequence. Of course, it has to be conceded that the line in the form which was provided for the signature of the attorney-in-fact under the typewritten name of the corporation was blank. But it does not follow that such blank, without more, means as a matter of law that the form was unsigned. In fact, plaintiff argues strenuously in the brief that the typewritten name is the signature.

I.

Is The Notice Of Intention Signed?
At the outset it should be recalled that a primary purpose of the notice of intention is to inform a landowner who *238 has engaged a general contractor to do construction work on his premises that a particular person or firm is about to provide the contractor with materials for use in connection with the project.
The statute imposes a mandatory requirement that the notice "be signed by or on behalf of the person for whose benefit it is filed." The impression to be gained from the legislative language is that the essential considerations are accurate identification of the materialman and authentication of the information given. The motive for the mandate to sign is not, as is the case with the statute of frauds, to safeguard a person against the imposition of an obligation unless his signature on a writing shows that the obligation was consciously and knowingly assumed.
It will be noted that the statute does not demand a holographic signature. See Finnegan v. Lucy, 157 Mass. 439, 32 N.E. 656, 657 (Sup. Jud. Ct. 1892). Ordinarily an instrument satisfies a general statutory requirement for signing, even that of the statute of frauds, where the name of the interested person or firm is printed, stamped or typewritten thereon either personally or by an authorized person with the intention that such act constitutes a signing and authentication thereof. Weber v. De Cecco, 1 N.J. Super. 353, 358 (Ch. Div. 1948); In re Bullivant's Will, 82 N.J. Eq. 340 (E. & A. 1913); Smith v. Howell, 11 N.J. Eq. 349, 357 [erroneously numbered 257 in 2d ed. 1899] (Ch. 1857); City of Gary v. Russell, 123 Ind. App. 609, 112 N.E.2d 872 (App. Ct. 1953); Walker v. Emrich, 212 Ark. 598, 206 S.W.2d 769 (Sup. Ct. 1947); Irving v. Goodimate Co., 320 Mass. 454, 70 N.E.2d 414, 417, 171 A.L.R. 326 (Sup. Jud. Ct. 1946); Assessors of Boston v. Neal, 311 Mass. 192, 40 N.E.2d 893 (Sup. Jud. Ct. 1942); 80 C.J.S., Signatures, § 7 (1953); 1 Restatement, Contracts, § 210 (1932); 1 Merrill, Notice, § 592 (1952); 3 American Law of Property (Casner ed. 1952), § 12.53.
Thus emerges the specific inquiry to be answered in these proceedings. Was the typewritten name "J.D. Loizeaux Lumber Company" inserted with the intention that *239 it should constitute a signing of the notice? The position of the name on the form in relation to the printed matter immediately above, on first examination makes for awkwardness when thinking in terms of a signature. Of course the location is not important if the purpose is apparent. Archbold v. Lo Truglio, 91 N.J.L. 375 (Sup. Ct. 1918); In re Phelan's Estate, 82 N.J. Eq. 316, 320 (Prerog. 1913), affirmed Phelan v. Phelan, 82 N.J. Eq. 647 (E. & A. 1914); Smith v. Howell, supra, 11 N.J. Eq. 357. On close scrutiny, however, the format of the notice gives ground for the argument that two purposes were intended to be served in typing the plaintiff's name at the particular place, namely, to designate the name of the person for whose benefit the paper was being prepared and filed, and as a signing.
The last items on the form are "Name," "By ____ Attorney-in-Fact" and "Address." They immediately follow the printed words: "and the full name and address of the one for whose benefit this notice is filed is as follows:". The addition, below the name, of the dotted line headed by the word "By" and ending with "Attorney-in-Fact" indicates that the typing of the name was designed to be a signing thereof, with the next line containing the signature of the agent authorized to affix the corporate signature. So it may be urged that it was not the insertion of the agent's name or signature which constituted the Lumber Company's execution, but that it was the typing in of the corporate name with the intention of performing the office of signing which made the typed name a signature. If this mental state existed, should the fact that the agent inadvertently overlooked adding his own signature vitiate his act of signing for the corporation?
The facts support the conclusion that an act of corporate signing was intended. Hugh B. Sweeney is listed on the notice as one of three individuals whose signature would bind the corporation "when affixed to any instrument relating to any right of lien existing by virtue of the filing" of the notice. He is the one who advised the owner's attorney that he would file a notice of intention and the testimony shows *240 that among his regular duties was the preparation of such papers. It was filed; there is no doubt it was authorized; it recites that "in compliance with the requirements" of the act "* * * this notice of an intention to perform labor or furnish materials or both is hereby submitted to you for filing and recording as required by the provisions of said act," and it complies with the statute in all respects if, in fact, signed. The materials were delivered under it; the corporation recognized and adopted it by filing the lien claim thereafter, and by moving to amend it to add the agent's signature, which motion was supported by an affidavit showing plainly that the completion and filing were corporate acts.
Research has revealed but few analogous cases. In City of Gary v. Russell, supra [123 Ind. App. 609, 112 N.E.2d 873], it appeared that an Indiana statute required a person who desired to prosecute a tort claim against a municipality to serve a notice of claim "signed by the person giving the same." Russell suffered injuries allegedly through the negligence of the city's employees. He engaged an attorney and authorized him to take the steps necessary to recover damages. The attorney prepared and served upon the City a notice specifying the nature of the claim. It was typewritten and at the end, also in typewriting, appeared (much in the same fashion as the introductory part of the Loizeaux notice):
"That this notice is given pursuant to the provisions of the Statutes of the State of Indiana.
Dated this 18th day of September 1947.
 _____________________________________________
 Clement Russell
 by ______________________________________ his
 attorney and duly authorized agent."
After referring to the testimony showing that Russell had authorized his attorney to do whatever was required for the prosecution of the case, the Appellate Court declared that the city was fully apprised of the claim by the form of the notice and that the typewritten signature accomplished a sufficient signing to comply with the statute.
*241 Again, in Irving v. Goodimate Co., supra [320 Mass. 454, 70 N.E.2d 415], a letter which bore no signature other than the typewritten words "The Goodimate Company" with the symbol "RL/s" in the lower left hand corner of the page, was held to be a sufficient signing to satisfy the statute of frauds where a jury question was presented as to the authority of RL (Rubin Lipsky) to act on behalf of the company in the particular transaction.
And in Assessors of Boston v. Neal, supra [311 Mass. 192, 40 N.E.2d 895], an application for tax abatement was made on an approved form, at the bottom of which were two lines with the word "signature" printed to the left of them. On these lines had been typed:
 "Trustees of the First Peoples Trust
 ____________________________________
 Treasurer"
The Supreme Judicial Court of Massachusetts held that even if the statute required a signature, the signing exhibited above was adequate.
After a consideration of all of the circumstances appearing in the matter before us, we think the conclusion is inescapable that the typewritten name of the plaintiff was intended to be a signing as well as to serve the other function disclosed by the printed material. And in our judgment it cannot be said that omission of the agent's signature (which could have been typed or written) renders the paper inadequate as a statutory notice.

II.

Assuming That The Notice Is Not Signed, Is It Amendable?
Although we have concluded that a sufficient compliance with the duty to sign has been shown, it seems advisable to decide this subordinate question which is posed by the parties.
As already indicated, the Legislature has made the notice of intention amendable "in matter of substance as *242 well as form" whenever the amendment "can be justly made." N.J.S. 2A:44-73.
Prior to 1940, amendment of a lien claim as to form or substance was authorized. N.J.S. 2A:44-94. But it could not be done in the case of a notice of intention. Belmont Coal & Lumber Co. v. James F. Wood Builders, Inc., 125 N.J.L. 315 (Sup. Ct. October 17, 1940). Apparently while the Belmont action was pending the Legislature added this authority. L. 1940, c. 138, p. 302, effective June 20, 1940. Presumably it was not considered to be retroactive. Vreeland v. Bramhall, 39 N.J.L. 1 (Sup. Ct. 1876). Manifestly the desire was to alleviate the rigid compliance with the statutory requirements which the courts had insisted upon previously.
It is difficult to conceive of broader language than the lawmakers used to express the scope of their intention. The earlier grant of power to amend the lien claim itself as to form or substance was said to be purely remedial and to require favorable construction "so as to advance the remedy and suppress the mischief." Drinkhouse v. American Brick & Tile Co., 58 N.J.L. 432, 434 (Sup. Ct. 1896), affirmed 59 N.J.L. 462, 467 (E. & A. 1896); Rizzolo v. Povsher, 89 N.J.L. 618, 622 (E. & A. 1916). No less advantageous treatment should be accorded the provision under consideration.
Form in the sense involved is the antithesis of substance. Substance is that which is essential, that which makes the thing what it is; form relates to technical details. If the matter put in the notice is in itself insufficient without reference to the manner of setting it out, the defect is one of substance; if the only fault is in the manner of setting it out, the defect is one of form. Smith v. Allen, 1 N.J. Eq. 43, 50 (Ch. 1830); Potts v. Miller, 73 S.D. 145, 39 N.W.2d 667, 671 (Sup. Ct. 1949); Rose v. Osborne, 136 Me. 15, 1 A.2d 225 (Sup. Jud. Ct. 1938); Pierson v. Springfield Fire & Marine Ins. Co., 7 Houst. 307, 12 Del. 307, 31 A. 966 (Super. Ct. 1885).
*243 According to the statute, signing of the notice is an essential  a matter of substance. But an amendment to rectify a defect of substance, at least to the extent necessary in the present instance, seems plainly within the legislative sanction.
New York has a somewhat similar provision in its Lien Law permitting amendment "in a proper case," but not "to the prejudice of an existing lienor, mortgagee or purchaser in good faith." N.Y. Lien Law, § 12-a (1932). There the notice of lien claim must be verified, Id., §§ 9, 12; and the provision has been construed to impose a mandate for the signing of the affidavit. Mozarsky v. Whinston Bros., Inc., 228 App. Div. 642, 237 N.Y.S. 842 (App. Div. 1929), affirmed 254 N.Y. 552, 173 N.E. 863 (Ct. App. 1940); Kingston v. M.S. Construction Corp., 249 N.Y. 533, 164 N.E. 573 (Ct. App. 1928).
In Teitler v. McDermott & McDonald, 282 App. Div. 953, 125 N.Y.S.2d 764 (App. Div. 1953), the claimant's signature appeared at the end of the body of the notice immediately before the language of the verification which contained his name and the notary's signature. The affidavit itself was not signed. The Appellate Division reversed an order of the trial court refusing to permit an amendment to add the signature and the Court of Appeals affirmed without opinion. 306 N.Y. 953, 120 N.E.2d 222 (1954). The ruling has particular significance because an earlier Appellate Division opinion in 1951 on the same facts was directly contrary. Fries v. Bray, 279 App. Div. 8, 107 N.Y.S.2d 425 (1951).
In our State the test for the granting of a motion to amend is whether it can "be justly made."
The trial court seemed to feel that the correction or addition to the notice was within his competence but that on the facts the motion to do so should not be granted.
In his oral opinion, he said in part:
"I could not close my mind to the remaining suit between the owners and the contractor. Only the fact that at the time the motion was made, with respect to the equities of the parties (sic). So I could not in all justice permit the amendment; because if I *244 permitted the amendment there would be an immediate lien. There is no question but what these goods went into the property of these owners. There would be an automatic lien for that amount. And that is the reason why I did not allow it."
The testimony taken at the trial was transcribed and filed but not included by either party in the appendix. Presumably this course was taken because of a belief that no light was shed thereby on the legal propriety of the denial of leave to amend. However, in view of the issue created by the statute as to whether amendment could be justly made, we have examined the entire record. R.R. 1:6-1(a); 2:6.
The trial was devoted almost exclusively to the introduction of proof on the question of personal liability of the owners, that is, whether they (through their attorney) had assumed a direct obligation to pay for the materials furnished to the contractor. The adverse decision on that subject has been accepted by the plaintiff.
At the beginning of the trial, which was conducted without a jury by consent, the court announced this stipulation:
"All parties agree that the goods were delivered and used on the premises of these owners and that the value as set forth is a reasonable value for the goods as sold."
The record discloses that the owners and the contractor Hanselmann entered into an agreement for the doing of certain construction work, at a cost of either $28,000 or $29,500. During the progress of the work Hanselmann received $18,614.20 on account. A controversy arose as to extra work and materials he claimed were ordered by the owners. And when plaintiff's suit was brought, it resulted in the cross-claim already referred to by Hanselmann against the owners for breach of contract and compensation for the extras, and the counterclaim by the owners against him for breach of contract.
Defendant owners offered no proof beyond what has been recited to indicate any injustice to them that would result from the proposed amendment. The mere existence of the claim and counterclaim between them and Hanselmann relating *245 to an alleged breach of the contract and to the extra work without more, ought not to militate against the enforcement of a lien for a materialman who concededly furnished materials used in the project. In fact, in their brief the owners set out no facts having to do with the performance of the contract or any argument directed thereto as the basis for a claim that the amendment could not be "justly" made. The statutory qualification is not mentioned by them. On this phase of the problem, they contend that as a matter of law "lack of signature is not an amendable defect."
Resolution of the issue need not extend beyond the specific context of the case. In our opinion, under the circumstances disclosed, particularly the format of the notice of intention and the insertion of the typewritten name of the plaintiff followed by the word "By," with the evident design to have the typed name serve the two purposes already spoken of, if doubt existed as to compliance with the statute, an amendment should have been allowed to insert or add the name of the authorized agent who was responsible for the drafting of the document. And no equity possessed by the owners has been submitted to us or appears by the testimony which should stand in the way of granting the amendment.
It is suggested finally that amendment is improper because the absence of proof that notice of the motion to amend was given to the "mortgagees or other contractors," constitutes a fatal defect. The act says that reasonable written notice shall be given "to all parties interested." No such objection was raised by the defendants or any other person in the trial court.
A second mortgagee whose incumbrance was created subsequent to the filing of plaintiff's notice of intention and a materialman whose notice was filed after that of plaintiff were made parties to the complaint and a judgment was sought establishing the priority of plaintiff's lien as to them. They filed no answer or appearance in the action. The appendix does not reveal whether defaults or final judgments were entered against them. See R.R. 4:56-1; 4:56-2. Our own check of the record shows that a stipulation of dismissal *246 as to Coyle, the other materialman, was entered; and a default, although no judgment, was entered as to the subsequent mortgagees. In any event, we do not conceive it to be necessary to pass upon the effect of the amendment on any rights or priorities as between them and the plaintiff. See N.J.S. 2A:44-73; 2A:44-87, 88, 89; 2A:44-104; 2A:44-112. Whatever that situation may be in the factual framework of the case, the validity of the amendment of the notice as between plaintiff and the owners is not affected.
The judgment in favor of defendant-owners is reversed and the record is remanded for the entry of the special judgment for the plaintiff.